IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

VARSITY BRANDS, INC.,
VARSITY SPIRIT CORPORATION and
VARSITY FASHIONS & SUPPLIES, INC.,

      Plaintiffs,

v.                                       No. 10-cv-02508

STAR ATHLETICA, L.L.C.,

      Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Star Athletica, LLC ("Star" and "Defendant"), submits the following memorandum in support of its motion to dismiss the Complaint filed by Varsity Brands, Inc., Varsity Spirit Corporation and Varsity Fashions & Supplies, Inc. (collectively, "Varsity" and "Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

## <u>INTRODUCTION</u>

Varsity and Star are competitors in the cheerleading uniform and accessories market. Star's motion to dismiss raises issues concerning the fundamental limits of copyright protection and the misapplication of fabric design protection to dress designs. Varsity claims to have copyrights in two-dimensional depictions of scenes including, *inter alia*, two-dimensional renderings of its cheerleading uniforms. Then, in its litigation practice, it seeks to extend the scope of that coverage beyond properly-copyrightable subject matter (fabric design) to the design of its actual uniforms (dress design) and, in effect, obtain a roundabout property right that exceeds the limits of copyright law, but such designs are not separable.[1] Overall, the Complaint fails to state claims upon which relief can be granted under either federal law or state law.

---

[1] *Nimmer on Copyright* provides insight on legal distinctions between fabric design and dress design. See 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §2.08[H] (2009). See the November 19, 2010 Declaration of Steven M. Crosby ("Crosby Decl.") Ex.1.

## THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

The first numbered paragraph of the Complaint appears under the heading of "Nature of the Action," and consists of the following summary:

> 1.    This is a civil action for copyright infringement arising under the copyright laws of the United States, 17 U.S.C. § 101 et seq., as amended (the "Copyright Act"), violations of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition, inducing breach of contract, inducing breach of fiduciary duty and civil conspiracy under state law.

Complaint, ¶ 1, page 1.

The plaintiff Varsity asserts eleven (11) separate "Claims for Relief" in its Complaint, with the first five claims alleging causes of action for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 106, and the tenth claim alleging a cause of action for violation of the Lanham Act, 15 U.S.C. § 1125(a).

In the remaining Claims for Relief of the Complaint, Varsity alleges certain causes of action under Tennessee state law for the following:  (a) "unfair competition" (Sixth); "inducing breach of contract" in violation of Tenn. Code Ann. 47-50-109 (Seventh); (c) "inducing breach of contract" under the common law (Eighth); (d) "inducing breach of fiduciary duty" (Ninth); and (d) "civil conspiracy" (Eleventh).

It is clear that the main thrust of Varsity's Complaint is for alleged copyright infringement, as evidenced by the statements made in the first numbered paragraph of the Complaint and by the organization of the Complaint, with the state law claims effectively being tag-along theories that depend on the validity of Varsity's allegations of copyright infringement. In the present motion to dismiss,[2] Star will show that Varsity's claims under the Copyright Act,

---

[2] A motion to dismiss is the appropriate procedural device to challenge the sufficiency of the allegations of Varsity's Complaint in the present case.   Star is aware of the unpublished

Lanham Act and Tennessee law all fail to state claims upon which relief can be granted.

First, Varsity is misapplying its copyrights for 2-dimensional artwork and <u>fabric design</u> (i.e., fabric design being the two-dimensional design applied to the textile fabric *before the garment is cut from the fabric*) to the parties' <u>dress designs</u> (clothing, fashion designs for its uniforms, which are useful articles, long categorized by Congress, the Copyright Office and the federal courts as generally ineligible for copyright protection).

Simple inspection of the parties' actual uniforms at issue show that neither Star's <u>nor Varsity's</u> actual uniforms have "reproduced and/or applied to the surface of the uniforms" the five Varsity Design artworks, very specific artworks whose expressions are defined by the *actual copyright deposits*. *See* the alleged deposits in Complaint Ex's 1, 3, 5, 7 and 9.

Varsity's copyrighted *drawings and pictures at issue* (its artwork and fabric designs), on the one hand, are shown in Ex's 1, 3, 5, 7 and 9 of the Complaint. Star's *cheerleader uniforms at issue* (its fashion designs), on the other, are shown in Ex's 2, 4, 6, 8 and 10 of the Complaint.[3]

---

Memorandum and Order entered in *Varsity Brands, Inc. v. J & M Spirit Wear, Inc.*, 2009 WL 3401182 (S.D.N.Y., Oct. 19, 2009), where the court denied a motion to dismiss, stating "The arguments would be more properly made in a motion for summary judgment at the conclusion of fact discovery." In the present case, for the reasons stated herein, Star would show that its legal arguments are not dependent on any facts outside the four corners of Varsity's Complaint, except to the extent allowed by Rule 12(b)(6). Since copies of written instruments attached as exhibits to a pleading are a part of that pleading for all purposes, under Rule 10(c), the court may consider any documents that the plaintiff has attached to the Complaint. The court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the Complaint and are central to plaintiff's claims. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997). The court may consider public records and matters of which a court may take judicial notice. *See Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999), *abrogated on other grounds, Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir.2003).

[3] The parties' catalogs were incorporated by reference in the Complaint. Clearer copies of the pictures from Star's catalog are accessible at http://www.starathletica.com/catalog.pdf. These

Second, the uniform designs depicted in the Varsity Design deposits are useful articles made from functional clothing components (also useful articles) which are not physically or conceptually separable from the uniforms themselves as their <u>form and function have merged</u>.

Third, the United States Court of Appeals for the Sixth Circuit, in an opinion filed on October 28, 2010, has just addressed the "product number" issue in Varsity's Lanham Act claim (Claim Ten) in a parallel case and found that marks which are merely descriptive of a product are not inherently distinctive, when used to describe a product, they do not inherently identify a source, and hence they cannot be protected.

Further, Star will show that Varsity's allegations of state law claims fail as a matter of law because they are conclusory or legal conclusions masquerading as factual allegations and, in several instances, are not even complete formulaic recitations of elements of the alleged causes of action.  Moreover, some of Varsity's state law claims are preempted by federal copyright law. 17 U.S.C. § 301.

**<u>THE STANDARD OF REVIEW APPLICABLE TO A MOTION TO DISMISS</u>**

In ruling on whether a complaint fails to state a claim upon which relief can be granted, the court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff.  *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir.2009).

In order to survive a motion to dismiss, a complaint must contain (1) enough facts to state a claim to relief that is plausible, (2) more than "a formulaic recitation of a cause of action's elements," and (3) allegations that suggest a "right to relief above a speculative level."  *See*

---

clearer copies can be magnified online to show that none of the scenes in Varsity's drawings or pictures are integrated into (or applied to) the textile fabric used to make Star's uniforms. Varsity's online catalogs also have magnification capabilities. *See* http://uniforms.varsity.com/VSFCatalog.aspx.

4

*Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir.2009), quoting *Bell Atlantic*

*Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007); *see*

*Jacobs v. Memphis Convention and Visitors Bureau*, 710 F.Supp.2d 663, 666 (W.D. Tenn.

2010)("While the Complaint need not present detailed factual allegations, to be cognizable it

must provide more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not suffice.").

To state a plausible, non-speculative claim under Rule 8(a), a complaint need only set

forth a short and plain statement of the claim, showing that the plaintiff is entitled to relief.  *See*

Fed.R.Civ.P. 8(a).  The Supreme Court set forth the following guidance for trial courts in ruling

on a motion to dismiss for failure to state claim in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  550 U.S., at 555, 127 S.Ct. 1955.  Nor does a Complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

> To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.,* at 570, 127 S.Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.,* at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*.  Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

129 S.Ct. at 1949.

The Sixth Circuit has further commented on the specificity requirements to assert a cognizable claim under the Federal Rules as follows: "[A] Complaint must contain either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory.... Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tn. Dept. of Children's Svs.,* 510 F.3d 631, 634 (6th Cir.2007).

## VARSITY'S MISAPPLICATION OF COPYRIGHT

At great expense to the Court and Defendant, Varsity purposefully misapplies its artwork copyrights – copyrights for two-dimensional artwork and fabric design (the "Varsity Designs") – in order to stifle lawful competition and prevent competitors from lawfully making, using and selling competing fashion designs, like Star's uniforms (the "Defendant's Designs").

If valid, Varsity's copyright registrations for two-dimensional *artwork* and *fabric design* would only offer protection for the specific *drawing* and *picture* artwork in its registration deposits. However, Varsity's copyright registrations do *not* offer exclusive rights for the utilitarian *subjects* depicted in the drawing and pictures. Therefore, Varsity's copyrights do not cover or preclude anyone from manufacturing any fashion designs of clothing depicted therein.

Star's goods (garments) are constructed primarily from solid-colored cloth panels that are reinforced with durable knit athletic braiding. But, these solid-colored garment components are devoid of two-dimensional fabric design reproductions of the Varsity Design artworks (e.g., the *drawing of two faceless women* in Ex.1 of the Complaint).

Clearly, Star has never reproduced the <u>scenes</u> of the "Varsity Designs" on any of its goods. E.g., <u>no</u> drawing of two faceless women appears on Star's uniforms in Ex.2 of the

6

Complaint. Yet, that is the essence of the allegation of Varsity's Claim 1 in light of the deposit in Ex.1, that the artwork marked "078" of the two faceless women in uniform have been applied to the surface of Star's uniform in Ex.2.

Contrary to the barebones allegations of copyright infringement (in ¶¶ 29, 36, 42, 49, 56 of the Complaint) for the five (5) claims of copyright infringement, Star is *not* selling, distributing, advertising *and has not* sold goods bearing reproductions of *any* of the scenes in the drawings and photographs *at all*. In application, Varsity has exceeded the scope of its alleged copyrights in the Varsity Designs, a scope limited by the nature of the work in its deposits, and has, thus, stated no copyright claim for which it is entitled to relief.

## THE NATURE OF THE WORK

The Nature of the Work that Varsity specified in each of its five copyright registrations at issue in this case is expressly limited to either "2-dimensional artwork" or "FABRIC DESIGN (ARTWORK)".[4] Yet, neither Star's Designs nor the Varsity Designs, as manifest in the Parties actual uniforms at issue, feature the fabric designs or 2-dimensional artwork (the drawings and pictures in the deposits) "reproduced and/or applied to [the Parties] apparel."[5] This is because Star's and Varsity's uniforms are fashion or dress designs, clothing, not fabric designs. Indeed, 4 of 5 deposits at issue are pictures of <u>dress designs</u>, finished uniforms whose design consists entirely of clothing components.

---

[4] See the copyright registrations annexed to Plaintiff's Complaint in Ex.s 15-19 and the copyright deposits allegedly corresponding to those registrations in Ex.s 2, 4, 6, 8 and 10.

[5] See operative allegations in ¶¶ 9 and 14 as well as ¶¶ 29, 36, 42, 49 and 56 of Varsity's Complaint.

## **CONGRESS AND THE COPYRIGHT OFFICE ON DRESS DESIGN**

As discussed supra, this Court may consider public records and matters of which a court may properly take judicial notice, such as the Copyright Office's policy decisions and circulars on the copyrightability of fabric design, as opposed to clothing, dress (i.e., fashion) design and uniforms.

To illustrate, the Nov. 5, 1991 Copyright Office Policy Decision ML-435 on the Registerability Of Costume Designs, *which addresses the "Examination Practices With Respect To Garment Designs" and uniforms in ¶ 6,* leaves no doubt – useful articles, such as clothing and "uniforms", fall under the "general policy of nonregisterability of garment designs".

Notably, the Copyright Office Policy Decision ML-435 ¶ 2 also provides:

"The Copyright Office has generally refused to register claims to copyright in three dimensional aspects of clothing or costume design on the ground that articles of clothing and costumes are useful articles that ordinarily contain no artistic authorship separable from their overall utilitarian shape. A two dimensional design applied to the surface of the clothing may be registered but this claim to copyright is generally made by the *fabric producer* rather than the *garment or costume designer.* Moreover, this claim to copyright is ordinarily made when the two-dimensional design is applied to the textile fabric and <u>before the garment is cut from the fabric</u>. [emphasis added].

The 1976 House Report *confirms* that <u>"ladies' dress" and other clothing cannot be protected by copyright</u> merely on the ground that the appearance of the useful article is determined by aesthetic considerations." [emphasis added].

See the November 19, 2010 Declaration of Steven M. Crosby ("Crosby Decl.") Ex.2.

A recent Copyright Office guidance in Circular 40 (Rev. 11/2009) takes this policy even further and is especially relevant to the copyright claims in the Complaint and Varsity's misapplication of its copyright in the Varsity Designs:

"Copyright in a work that portrays a useful article extends only to the artistic expression of the author of the pictorial, graphic, or sculptural work. It does not extend to the design of the article that is portrayed. For example, <u>a drawing or</u>

<u>photograph of</u> an automobile or <u>a dress design may be copyrighted, but that does not give the artist or photographer the exclusive right to make</u> automobiles or <u>dresses of the same design</u>." [emphasis added].

*See* Crosby Decl. Ex.3 (i.e., Circ. 40 (Rev. 11/2009), p.3).

Varsity included copyright deposits in the exhibits of its Complaint that are exactly on point – a <u>drawing</u> or a <u>photograph</u> of a scene that includes, *inter alia*, a particular Varsity uniform design may be copyrighted, as is the case here, but <u>that does not give Varsity the exclusive right to make a uniform of the same design</u>, only the exclusive right (if valid) to reproduce, prepare derivative works and distribute copies of <u>the particular drawing or photograph</u> in its deposits (e.g., Varsity's *specific* sketch of two faceless women in cheerleader uniforms with ribbons in their hair (Ex.1 of the Complaint), or its *specific* picture of a woman and a man in cheerleader uniforms posed to simulate joggers running in the same direction, slightly offset from one another, with the man behind the woman (Ex.3), or its *specific* pictures of finished garments (actual cheerleader uniforms devoid of fabric designs) lying on a flat surface (Ex.s 5 and 7), or its *specific* picture of a human torso in uniform with the humans arms and head cut off above the chin (Ex.9) that are alleged to be genuine copyright deposits for the registrations at issue).

Indeed, the Copyright Office is very clear that only the specific artwork deposited is protected – Circular 40 (Rev. 11/2009) provides that there is "No Blanket Protection" and, as such, copyrights for a particular sketch or photograph do not cover earlier or later ones:

> "Registration covers only the particular work deposited for registration. It does not give any sort of 'blanket' protection to other works in the same series. … Each copyrightable version or issue must be registered to gain the advantages of registration for the new material it contains."

*See* Crosby Decl. Ex.3 (i.e., Circ. 40 (Rev. 11/2009), p.5).

Clearly, registration of artistic sketches and photographs with the United States Copyright Office, even those that contain particular expressions of useful articles, will not usurp from the United States Patent and Trademark Office the exclusive authority to grant a monopoly through letters patent on a dress design. But that is precisely what Varsity attempts to do in litigation.

Contrary to Varsity's assertion to the Court in ¶ 9 of its Complaint, Varsity's "apparel" is devoid of artwork reproduced or applied to the surface of its uniforms (with the exception of each school's team logo, which, like the school colors, is *not* owned by Varsity, nor are the logos a copyright issue in this case). Varsity also knows that its Designs are similarly devoid of artwork reproduced or applied to the surface of its uniforms – they are devoid of the 2-dimensional artwork that one might see reproduced or imprinted on a tee shirt and they are devoid of a fabric design pattern that is woven into a roll of textile fabric, fabric <u>later cut and pieced together</u> to manufacture, e.g., a sweater or a necktie with a striped design woven in or imprinted on the fabric the garment is made from.

## VARSITY'S DESIGNS ARE NOT SEPARABLE FROM ITS UNIFORMS

Even if the Court were to conclude that Varsity's five copyrights deposits of two-dimensional artwork and fabric design are applicable to the uniforms depicted therein, Star has found no cases, recognizing as valid, copyrights in designs of uniforms, such as those at issue here. But Star has found case law requiring designs for uniforms, shoes and other clothing to be marketable separately for protection. Varsity's copyright infringement claim should be dismissed as Varsity's "apparel" are useful articles, uniforms whose designs are not viewed or marketable independent of their utilitarian function as Cheerleading Uniforms.

To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it. *Jones v. Blige,* 558 F.3d 485,

10

490 (6th Cir.2009). It is well-settled, however, that "copyright protection extends only to the expression of ideas and not to the ideas themselves." *Stromback v. New Line Cinema,* 384 F.3d 283, 296 (6th Cir.2004); 17 U.S.C. § 102(b).

Star contends that Varsity's Complaint fails to state a claim for copyright infringement because a copyright registration for a 2-dimensional drawing or photograph of a functional object does not protect the functional design of the object or the physical object itself.

"Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship included ... pictorial, graphic, and sculptural work...." 17 U.S.C. § 102(a)(5).

The Copyright Act defines the phrase "pictorial, graphic, and sculptural work" to include the following:

> two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but *not their mechanical or utilitarian aspects* are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101 (emphasis added).

The phrase "useful article" refers to "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information...." *Id.*

Accepting Varsity's factual allegations as true and construing the complaint liberally in its favor, it fails as a matter of law to identify a copyrightable work.

11

Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' *Twombly* 127 S.Ct. at 1955).

This omission is especially problematic due to the functional nature of Varsity's cheerleader outfits. *See* 17 U.S.C. §§ 101, 102(a)(5).  A particularly instructive case - *Chosun, Intern., Inc. v. Chrisha Creations, Ltd.,* 413 F.3d 324, 328-29 (2nd Cir.2005) - recognized, "[f]or many years, articles of clothing have been identified as 'useful' items, hence excluded from copyright eligibility.  *See, e.g, Fashion Originators Guild v. FTC,* 114 F.2d 80, 84 (2nd Cir.1940)(L.Hand, J.)(holding that 'ladies' dresses' are useful articles not covered by the Copyright Act)." The Court of Appeals then explained:

> But we also have held separable elements in clothing, to the extent that they exist, may be eligible for copyright protection.  Thus, in *Kieselstein-Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989 (2nd Cir.1980), we concluded that the plaintiff's belt buckle designs were copyrightable.  Taken as a whole, the belt undeniably was a 'useful article' which performed the service of preventing one's pants from falling down.  The ornate buckle design, however, was conceptually separable from that useful 'belt' function.  The design-which did not enhance the belt's ability to hold up one's trousers-could properly be viewed as a sculptural work with independent aesthetic value, and not as an integral element of the belt's functionality.  *See id.* at 993. It was, therefore, copyrightable.  *Id.*  And, in subsequent cases, we have reaffirmed the principle that separable elements of useful articles are protected by the Copyright Act. *See Brandir v. Cascade Pacific Lumber,* 834 F.2d 1142, 1145 (2nd Cir.1987)(establishing the test for conceptual separability); *Carol Barnhart v. Economy Cover Corporation,* 773 F.2d 411, 418 (2nd Cir.1985)(noting that physically or conceptually separable design elements are copyright-eligible).
>
> Accordingly, design elements that can be 'conceptualized as existing independently of their utilitarian function,' *Carol Barnhart,* 773 F.2d at 418, are eligible for copyright protection.  And we have noted that, while design elements that 'reflect a merger of aesthetic and functional considerations ... cannot be said to be conceptually separable from the utilitarian elements,' *Brandir,* 834 F.2d at 1145, 'where design elements can be identified as reflecting the designer's artistic judgment exercised *independently* of functional influences, conceptual separability exists.' *Id.* (emphasis added). *See also id.* at 1147 (clarifying that,

12

when a design element is 'influenced *in significant measure* by utilitarian concerns,' the design is not conceptually separable from the underlying article) (emphasis added). In all this we have not doubted that when a component of a useful article can actually be removed from the original item and separately sold, without adversely impacting the article's functionality, that physically separable design element may be copyrighted.

*Chosun Intern.,* 413 F.3d at 328-29.

Varsity's copyright infringement claim should be dismissed as Varsity's products are useful articles, uniforms whose designs are not viewed or marketable independent of their utilitarian function as cheerleading uniforms. Allowing such a copyright would open the floodgates for any and all clothing designers to protect their designs by simply calling them two dimensional artwork or fabric designs.

In a 2006 S.D.N.Y. case that parallels this one, Judge Lynch decided that a plaintiff was indirectly attempting to protect the design of an actual three-dimensional shoe, based on a two-dimensional rendition (a drawing in the form of an etching) of the shoe's design ("SHOE"). See Crosby Decl. Ex.4 (Eilya, Inc. v. Kohl's Department Stores complaint with SHOE attached as downloaded from Pacer). Judge Lynch, now a Judge on the Second Circuit Court of Appeals, opined that, "[i]f such roundabout copying were permitted, copyright law's exclusion of useful articles would be eviscerated, because any useful article could be copyrighted by merely obtaining a copyright for a two-dimensional representation of the article." *See Eilya, Inc. v. Kohl's Department Stores*, 2006 WL 2645196 at 9 (SDNY 2006).

The plaintiff, Eilya, alleged that the "separate design elements" of its SHOE design included "two elongated stitched-patter[n]s of like size on the top front portion of the SHOE design, two elongated stitched-patterns of like size on the sides of the SHOE design, a strap with visible stitching, curved shaped stitching on the front portion of the SHOE design, a border that

13

[w]raps around and extends up the back, the sides and front of the SHOE design, a spotted design of circles all through the boarder and extending up the back, sides and front of the SHOE design, and a spotted design of circles all through the sole of the SHOE design." *Id* at 11.

In *Eilya*, the plaintiff alleged that defendant Kohl's Department Stores copied these specific design elements when it created its own line of shoes. However, the court found the elements of Eilya's SHOE design *could not* be "physically separated from an actual pair of shoes without affecting the shoe's functionality."

> "Removing the strap, stitching, or sole of a shoe would, <u>to some degree</u>, adversely impact a wearer's ability to locomote by foot, either because the shoe would fall off (without a strap), fall apart (without stitching), or provide no protection against the ground (without a sole). Nor could any of the design elements, once removed, be separately sold or exist as an independent work of art. Even assuming that some portion of the stitching or the border on the SHOE design could be removed from an actual shoe without affecting the shoe's functionality, removed stitching is simply a length of thread, and a removed border is merely a formless band of spotted rubber. Neither feature is a separate work of copyrightable art." *Id* at 11.[emphasis added].

Similarly in the present case, removing the durable knit athletic braiding and solid-colored material would, "to some degree", "adversely affect the wearer's ability to [cheer]" because without binding and reinforcing braiding, the uniform would deteriorate, malfunction or fall apart sooner than if it had remained intact, and removing panels of clothing and braiding would significantly decrease the protection provided by these functional uniform components (or provide no protection at all) from the elements or exposure to other dangers.

Indeed, the designs of the Parties' uniforms consist of pattern-less solid colored panels of clothing, stitched together, forming clothing seams. Those clothing seams and panels are then protectively covered or reinforced with durable knit athletic braiding that is stitched to the clothing panels. The durable knit athletic braiding also functions to protect and reinforce the

neck, arm, waste and leg openings in the clothing during strenuous high-impact athletic activities. The durable knit athletic braiding is an industrial design feature (an integral functional feature of uniforms which helps prolong the life, form and shape of the clothing). School colors in the uniform designs, even in the multi-stripe durable knit athletic braiding, have *function* and help associate the cheerleader squad uniforms to the school, but such colored components are *not* merely to convey information.

Nor could any of the design elements (the individual clothing components) of Varsity's (or of Star's) uniforms, once removed, be separately sold or exist as an independent work of art.

Even assuming that some portion of the braiding on the Varsity Design could be removed from an actual uniform without affecting the uniform's functionality, removed braiding is simply a length of durable athletic garment reinforcing trim, and a removed solid-colored panel of cloth is merely a formless piece of textile devoid of design reproduced on and/or applied to the textile. Neither of these functional cheerleader components is a design feature that is a separate work of copyrightable art.

The court in *Eilya* also reasoned that the design features of SHOE were not conceptually separable:

> "[T]he features reflect the designers decisions regarding how best to implement the shoe's functional purposes – how to, in an aesthetically pleasing manner, keep the shoe attached to the wearer's feet, hold the material of the shoe together, cushion the wearer's feet and provide traction on various surfaces" and "the blending of form and function in the SHOE design results in the exclusion of its design elements from copyright protection." *Id.* at 12. "[A] blending of function and appearance lands a feature on the functional side of the line, rendering it inseparable and ineligible for copyright protection". *Id.* at 12. [emphasis added].

The features of the Parties' cheerleader uniforms in this case also reflect the designers decisions regarding how best to implement the uniforms' functional purposes – how to, in an

aesthetically pleasing manner, keep the panels of pattern-less solid colored panels of clothing, stitched together, forming clothing seams.  Those clothing seams and panels are then protectively covered or reinforced with durable knit athletic braiding that is stitched to the clothing panels. The durable knit athletic braiding also functions to protect and reinforce the neck, arm, waste and leg openings in the clothing during strenuous high-impact athletic activities.  Thus, where form and function have merged, the cheerleader uniform designs cannot be said to be conceptually separable and thus protectable under copyright law.

In the present case, Varsity is attempting to indirectly protect the design elements of cheerleader uniforms, which are not copyrightable in view of Judge Lynch's reasoned opinion in *Eilya*.  But this should be of no surprise to the Parties or the Court as the Copyright Office has long established that protection in actual garments, including uniforms, is outside of copyright law.  It is black letter copyright law that functional matter, such as clothing, is not protectable.

### THE VARSITY DESIGNS ARE NOT SEPARABLY MARKETABLE

Varsity's claim of copyright protection for its cheerleader clothing must also be dismissed as a matter of law because these articles of clothing are useful articles, not subject to copyright protection, whose designs are not separably marketable.  *See Galiano v. Harrah's Operating Co., Inc.,* 2004 WL 1057552 at *5 (E.D.La. May 10, 2004)("Clothing designs are not copyrightable."), *affirmed in part, vacated in part, Galiano v. Harrah's Operating Co., Inc.,* 416 F.3d 411, 422 (5th Cir.2005)(designer of casino uniforms did not show uniforms constituted "pictorial, graphic, or sculptural works" because she made no showing they were marketable independently of their utilitarian function as uniforms). [emphasis added].

Judge Lynch similarly held, *supra*, that "Nor could any of the design elements, once removed, be separately sold or exist as an independent work of art." *Eilya* at 11.

16

Varsity simply cannot show it has marketed the Varsity Designs independent of their utilitarian function as uniforms – several of its deposits are from its catalogs of uniform designs.

Indeed, after much searching, Star has been unable to locate *any* case in *any* Circuit recognizing copyright rights in *any* uniforms, and case law in other Circuits explicitly denies such protection. The only exception is for matter separable as artwork, which these designs are not.

## VARSITY'S CLAIMS OF TRADEMARK INFRINGEMENT ARE NOT SUSTAINABLE AS A MATTER OF LAW.

Varsity's Tenth Claim for Relief is identified as a claim for "Violation of Lanham Act," consisting of Paragraphs 80 through 85 of the complaint.  In Paragraph 80, Varsity reiterates the allegations of Paragraphs 1 through 79, and to the extent that this purported "Claim" has any substance, the operative allegations are made in Paragraphs 81 through 83, which are as follows:

> 81.    Defendant has in connection with its goods used false designations of origin and made false and misleading misrepresentation of fact.

> 82.    The above designations of origin and misrepresentations of fact are likely to cause confusion, or to cause mistake, or to deceive the purchasing public with respect to the origin, sponsorship or approval of Defendant's goods.

> 83.    The above actions of Defendant constitute violations of 15 U.S.C. § 1125(a).

As noted, conclusory allegations or legal conclusions masquerading as factual allegations are insufficient under the Federal Rules of Civil Procedure and Sixth Circuit precedent, *Eidson v. State of Tn. Dept. of Children's Svs.,* 510 F.3d 631, 634 (6th Cir.2007), but Varsity's allegations of trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a), also fail because it is clear from the face of the complaint that Varsity is seeking to allege a cause of action for violation of the weakest type of mark, either a generic mark, for which there is no protection, or

17

a descriptive mark which is inherently not distinctive. *See Tenneco Automotive Operating Co. v. Kingdom Auto Parts*, 2010 WL 4365580 (6th Cir., October 28, 2010)(Unpublished opinion).

The Lanham Act, 15 U.S.C. §§ 1051, *et seq.,* "was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in ... commerce against unfair competition.' *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127). The Lanham Act forbids "[a]ny person .. .  [from] us[ing] in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods . . . or in commercial advertising or promotion, misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her . . . goods." 15 U.S.C. § 1125(a)(1). Any person who does so is "liable in a civil action by any person who believes that he or she is likely to be damaged by such act." *Id.*

In increasing order of distinctiveness, the categories of a mark's distinctiveness are (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Two Pesos,* 505 U.S. at 768. "Generic" marks are given no protection, while the latter three types are "deemed inherently distinctive," because "their intrinsic nature serves to identify a particular source of a product" rather than merely the product itself. *Id.; see Leelanau Wine Cellars, LTD v. Black & Red, Inc.,* 502 F.3d 504, 512-13 (6th Cir.2007). "Marks which are merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected." *Two Pesos,* 505 U.S. at 769. Descriptive marks can only receive trademark protection if they have acquired secondary meaning. *Id.* If the mark has acquired secondary meaning, the infringer is only liable under the Act if the mark holder proves a "likelihood of confusion." *Id.*; 15 U.S.C. § 1125(a)(1).

On October 28, 2010, the Sixth Circuit affirmed a district court's entry of summary

judgment in *Tenneco Automotive Operating Co. v. Kingdom Auto Parts*, 2010 WL 4365580 (6th

Cir., October 28, 2010), in an opinion written by Chief Judge Batchelder.  In *Tenneco,* the owner

of the Monroe brand strut sued a Canadian competitor alleging that the Canadian company had

infringed its trademark and thereby violated the Lanham Act and certain Michigan state laws by

sending its strut to a Chinese manufacturer to copy the product, which the Chinese manufacturer

did, including even the part number on the strut assembly.  The district court rejected the

plaintiff's contention that the model number on the product was distinctive and designated its

origin as being the plaintiff's product.  The Sixth Circuit affirmed the district court's dismissal of

the plaintiff's action, stating as follows:

> Here, however, the product itself is not protected. Tenneco seeks
> protection only for the product number.  Defendants were perfectly within their
> rights to send the strut to China to be copied, despite Tenneco's repeated attempts
> to paint that action as a black mark.  ***As the district court noted, the law favors
> the copying of nonprotected items.***  The testimony Tenneco quotes from
> Defendants' President Gary Calagoure simply does not provide evidence of an
> intent to copy the product numbers.  Calagoure admits that they sent the product
> to China to be copied, and that the numbers were stamped on the struts.  He
> further characterizes this as a mistake that has been corrected.  This is not a trade
> dress case, where the Court is necessarily engaged in a broad inquiry.  Here, we
> are looking for evidence of intent to copy a specific mark, and that evidence is
> absent.  Once the product number was already on the strut, it made perfect sense
> for Defendants to use it on packaging and labels, which they did until switching,
> as a result of this litigation, to new product numbers.  Therefore, although the
> district court's given reason for deeming the evidence irrelevant was incorrect, we
> find that Tenneco has not produced any evidence of intentional copying.

*Tenneco*, 2010 WL 4365580, page 6 (emphasis added; footnote omitted).

Similar to the parts number on the strut in *Tenneco*, the cheerleading uniforms that

Varsity markets and sells in competition with Star and others in the "highly competitive

cheerleading apparel and accessories business" (Complaint, ¶ 9) are non-protected items that are

generic and descriptive.  As the court noted in *Tenneco*, the law actually *favors* the copying of

non-protected items such as part numbers and, Star contends, cheerleaders' uniforms. Of course, this in no way serves as an admission of Star copying uniform designs or part numbers.

## PLAINTIFF'S STATE LAW CLAIMS ARE DEPENDENT ON ITS CLAIMS OF COPYRIGHT AND TRADEMARK INFRINGEMENT WHICH ARE NOT SUSTAINABLE AS A MATTER OF LAW.

The counts – or "claims for relief" – of the Complaint which purport to allege causes of action under Tennessee state law are the conclusory, vague and imprecise pleading that both the Supreme Court and the Sixth Circuit have recently admonished litigants are insufficient under the Federal Rules of Civil Procedure.

Even viewing the Complaint in the light most favorable to Varsity, it is difficult to construe the factual allegations of the Complaint as a coherent and comprehensible – and minimally sufficient – statement of facts in support of the purported claims under Tennessee state law.  After alleging that Star has engaged in conduct that constitutes infringement of Varsity's copyrights with respect to certain cheerleading clothing and related articles, beginning on page 4, at Paragraph 16, Varsity characterizes the next ten paragraphs as allegations of "Defendant's Other Tortious Activities."

Without any prefatory foundation, Varsity begins Paragraph 16 with the following allegation:  "In retaliation for Varsity's prospective and eventual termination of a supply agreement between Varsity and R. J. Liebe Athletic Lettering Company, Defendant established its business to compete against Varsity in the sale of cheerleading uniforms and related accessories."[6]  Varsity says nothing more about the supply agreement, before or after the

---

[6] Varsity's allegation that Star is engaged in competition with Varsity in the sale of "cheerleading uniforms and related accessories," is revealing in that it makes clear that Varsity unquestionably seeks to protect its clothing – its cheerleading uniforms – which are useful articles not subject to copyright protection.  Although Varsity attempts to camouflage its true intent, it is clear that

allegations of Paragraph 16.

Varsity alleges that "Defendant, acting independently or in a conspiracy with others" – who are nowhere otherwise identified – induced Rebecca Cook, "a Varsity ex-employee under a noncompetition agreement with Varsity customers to purchase cheerleading uniforms from Defendant." (Complaint, ¶ 18).

Varsity also alleges that "Defendant induced Kerry Leake, while an employee of Varsity and thereafter as an ex-employee under a non-competition agreement with Varsity, to steal away from Varsity from its server and files. . . electronic files used to create outline mascot letterings and monogramming." (Complaint, ¶ 19).

Varsity alleges that Star uses names "that are deceptively similar to Varsity's naming conventions" for mascots (Complaint, ¶ 20), that Star obtained "without permission" files that had been supplied to the R. J. Liebe Athletic Lettering Company (Complaint, ¶ 21), that Star selected "style codes for its tackle twill offerings that are identical or deceptively similar to Varsity's style codes" (Complaint, ¶ 22), that Star induced Mr. Leake "to provide access to Varsity's proprietary uniform patterns *and other* [non-specific] *valuable information* in preparation for competition with Varsity." (Complaint, ¶ 23)(emphasis added).

Varsity alleges that Mr. Leake "induced one or more of Varsity's uniform manufacturers[7] to manufacture cheerleading uniforms for Defendant in violation of Varsity's contracts with such manufacturers." (Complaint, ¶ 24).

---

Varsity's goal is to unfairly protect itself from legitimate competition for products that are essentially generic and un-protectable under long-settled and basic rules of copyright law.

[7] The identity of who are allegedly "Varsity's manufacturers" is nowhere revealed in the Complaint, nor are the terms of its alleged contracts with these unnamed manufacturers described.

The factual allegations of the "Defendant's Other Tortious Activities" conclude with paragraphs 25 and 26 which say that Varsity's counsel sent a cease-and-desist letter to Star on March 4, 2010 and that Star's counsel denied the demands of Varsity on March 8, 2010, but neither letter is attached to the Complaint and Varsity does not elaborate on the content of the correspondence.

In sum, the allegations of fact in the first 26 paragraphs of the Complaint (which is the last paragraph before the allegations of Varsity's "First Claim for Relief") are barebones. The allegations of Paragraphs 16 through 26 of the Complaint are vaguely suggestive of wrongful conduct that is simply not sufficiently plead. Star cannot meaningfully respond to these allegations, without more information, and the court certainly cannot fill in the omitted information in order to develop a coherent statement of actionable conduct. For example, in Paragraph 24, Varsity alleges that Mr. Leake "induced one or more of Varsity's uniform manufacturers to manufacture cheerleading uniforms for Defendant in violation of Varsity's contracts with such manufacturers." How can Star be expected to respond to this allegation? Who is the alleged manufacturer? And what does Varsity mean when it describes a manufacturer as "Varsity's"? What were the terms of the alleged "contracts"? Is it a violation of a valid agreement to simply engage a manufacturer to make a uniform?

Similar to the allegations of Paragraph 24, the other allegations of Paragraphs 16 through 26 lack sufficient foundation to support the legal claims on which they are supposedly based. Thus, it is effectively meaningless for Varsity to allege in Paragraph No. 62 as follows (which is the sole additional allegation of its "Sixth Claim for Relief" for Unfair Competition): "The aforementioned acts of Defendant constitute unfair competition, unlawful under the laws of the State of Tennessee."

Similarly, in its "Seventh Claim for Relief", allegedly for inducing breach of contract under Tenn. Code Ann. § 47-50-109, Varsity's total allegations in support of this cause of action (after reiterating by reference its prior allegations of the Complaint) are as follows:

> 66.     Defendant has willfully induced one or more third parties to breach their contracts with Varsity.

> 67.     The above actions of Defendant constitute violations of Tenn. Code Ann. § 47-50-109.

> 68.     Upon information and belief, by the acts complained of, Defendant has made substantial profits and gains, which it is not in law or in equity entitled to retain.

Complaint, page 11.

Varsity's allegations of common law "inducing breach of contract," set forth as its "Eighth Claim for Relief," are equally vague and non-specific:   "72.  Defendant's actions constitute inducing the breach of contract in violation of the common law of the State of Tennessee."

Varsity's allegations of "inducing breach of fiduciary duty," set forth as its "Ninth Claim for Relief," simply say:  "77.  By the above actions Defendant has induced employees of Varsity to breach their fiduciary duties to Varsity."

Finally, Varsity's allegations of civil conspiracy, alleged as its "Eleventh Claim for Relief," are no more enlightening:

> 87.     Defendant has in concert and in conspiracy with one or more former employees of Varsity and third parties engaged in lawful acts to achieve an unlawful purpose, or alternatively, has engaged in unlawful acts to achieve a lawful purpose.

> 88.     The above actions of Defendant constitute a civil conspiracy unlawful under the laws of the State of Tennessee.

Complaint, page 13.

Neither the court nor the defendant should be compelled to strain or speculate to determine the factual or legal bases for a plaintiff's claims, and, yet, this is exactly what Varsity's Complaint requires Star and this Court to do with regard to its purported causes of action under Tennessee law.  The Complaint filed by Varsity is precisely the kind of "the-defendant-unlawfully-harmed-me" accusations that the Supreme Court has rejected in *Twombly*, *Papasan* and, most recently, *Iqbal*.  Indeed, with respect to its allegations of state law causes of action, Varsity's Complaint does not even rise to the level of offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *See Garmley v. Opryland Hotel Nashville, LLC*, 2007 WL 4376078 (M.D. Tenn., Dec. 13, 2007)(dismissing plaintiff's tortuous interference with contract or business expectancy claims where the Complaint "does not even include a formulaic recitation of the elements of his causes of action.").

## VARSITY'S "SIXTH CLAIM FOR RELIEF" FOR UNFAIR COMPETITION SHOULD BE DISMISSED AS A MATTER OF LAW.

Tennessee courts have recognized the tort of unfair competition in two circumstances: First, in cases in which the defendant engaged in conduct that "passed off" its product or service as that of the plaintiff, the defendant acted with intent to deceive the public as to the source of the product or service offered, and the public was actually confused or deceived, *see Sovereign Order of St. John of Jerusalem v. Grady,* 119 F.3d 1236, 1243 (6th Cir.1997); *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.* 12 F.Supp.2d 760, 766 (M.D.Tenn.1998), and second, in cases in which an employee used confidential information to his employer's detriment, *see B & L Corp. v. Thomas & Thorngren, Inc.,* 917 S.W.2d 674, 681 (Tenn.Ct.App.1995); *B & L Corp. v. Thomas & Thorngren, Inc.,* 162 S.W.3d 189, 215-216 (Tenn.Ct.App.2004); *see also Dade Int'l, Inc. v. Iverson,* 9 F.Supp.2d 858, 862 (M.D.Tenn.1998)(dismissing claim for unfair

24

competition in part because the court was "unable to find any case law which has specifically extended the tort of unfair competition to a case similar to the one at bar").

Arguably, "unfair competition" may be a general category of torts under Tennessee law, since the court of appeals in *B & L Corp.,* stated that "[u]nfair competition is a generic name for several related torts involving improper interference with business prospects."   917 S.W.2d at 681.   And, although Varsity's Complaint in the present case specifically alleges a common law claim of interference with contracts, as opposed to "intentional interference with business prospects" which was recognized as a cause of action under Tennessee law by the Supreme Court of Tennessee in *Trau-Med of America, Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn.2002), it nevertheless appears that Varsity's claim of "unfair competition" is actually of the recognized "passing off" variety, to the extent that its Complaint does, in fact, allege a cause of action.

However, Varsity fails to allege that Star "passed off" its products as Varsity's, even though it makes vague allegations of a "violation of the Lanham Act" and it specifically alleges multiple claims of copyright infringement, which might bring its claim within *Sovereign Order of St. John of Jerusalem,* 119 F.3d at 1243, nor does Varsity's pleading actually fit within the form of unfair competition recognized in *B & L Corp.,* 917 S.W.2d at 681, where an employee used confidential information to his employer's detriment.   Again, Varsity's Complaint in the present case alludes to improper conduct by Star but it fails to explicitly allege that anyone, such as Kerry Leake or Rebecca Cook, actually was induced to violate a specific, identified provision of any explicit agreement or contract.   Instead, Varsity makes vague allegations of a "noncompetition agreement" but it fails to describe in any way the terms of the alleged agreement or what provisions, if any, were or have been violated.

25

Assuming that the specific tort of intentional interference with business relationships recognized in *Trau-Med of America, Inc.* falls within the general category of "unfair competition," Varsity's attempt to state such a claim fails.  Nowhere does Varsity specifically allege (1) that it has an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) that Star has knowledge of Varsity's relationships and not a mere awareness of its business dealings with others in general; or (3) that Star intends to cause the breach or termination of Varsity's business relationships.  In short, Varsity's alleged claim for unfair competition should be dismissed under Rule 12(b)(6).

Moreover, aside from failing to meet the relatively low standard of asserting a cause of action under Rule 8, to the extent that Varsity's allegations of common law unfair competition could be interpreted to be an allegation of interference with prospective economic advantage or intentional interference with business relationships recognized by the Supreme Court of Tennessee in *Trau-Med of America, Inc.*, it appears that this state law claim is preempted by federal copyright law, 17 U.S.C. § 301.  *See Stromback v. New Line Cinema,* 384 F.3d 283, 306 (6th Cir.2004)("Generally, tortuous interference claims (with contract or prospective economic advantage) are held to be preempted because the rights asserted in such claims are not qualitatively different from the rights protected by copyright."); *Curcio Webb, LLC v. Nat'l Benefit Programs, Ag'cy, Inc.*, 367 F.Supp.2d 1191, 1213 (S.D. Ohio 2005).[8]

In *Stromback*, the Sixth Circuit quoted Professor Nimmer for the rationale for preemption of such state law claims:

"Insofar as unauthorized reproduction, distribution, performance or display causes

---

[8] *Stromback* arose from claims under Michigan and California law, and *Curcio Webb* arose under Ohio law, but it does not appear that the court's analysis would be different with respect to similar claims under Tennessee law.

the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright; copyright also contemplates loss of actual or prospective contract benefits by reason of such unauthorized acts. Pre-emption in this context would, then, appear to be justified. The fact that the tort, unlike copyright infringement, requires awareness of the conflicting contract and an intentional interference with it merely means that the state-created right is narrower than its copyright counterpart, not that it is qualitatively different so as to preclude pre-emption."

384 F.3d at 307, quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][a](footnotes omitted).

## VARSITY'S "ELEVENTH CLAIM FOR RELIEF" FOR CIVIL CONSPIRACY SHOULD BE DISMISSED AS A MATTER OF LAW.

In *McGee v. Best*, 106 S.W.3d 48 (Tenn. Ct. App. 2002), the Tennessee Court of Appeals affirmed the trial court's dismissal of a plaintiff's claim of "unfair competition and civil conspiracy" based upon the following bald allegation, similar to Varsity's allegations in the present case:

> 85.  Plaintiff further alleges that the acts of IEI and the other Defendants set forth herein constitutes breach of contract, breach of fiduciary duty, breach of covenant of good faith and fair dealing, unfair competition and *conspiracy*. (Emphasis added).

106 S.W.3d at 64.  In ruling that the foregoing allegation was insufficient, as a matter of law, to allege causes of action under Tennessee law for civil conspiracy and unfair competition, the appellate court in *McGee* stated as follows:

> However, the plaintiff provided no facts upon which the causes of action for civil conspiracy and unfair competition are based. As to civil conspiracy, this Court has stated that "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Haynes v. Harris*, No. 01A01-9810-CV-00518, 1999 WL 317946 at *2 (Tenn.Ct.App.1999)(citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)). Furthermore, this Court has recognized that although "the adoption of the Tennessee Rules of Civil Procedure greatly relaxed the requirements as to

27

pleadings, pleading of some facts giving rise to a claim for relief is still a necessary requirement." *Jasper Engine & Transmission Exch. v. Mills,* 911 S.W.2d 719, 720 (Tenn.Ct.App.1995)(citing *W & O Constr. Co. v. City of Smithville,* 557 S.W.2d 920 (Tenn.1977)).

*Id.*

## VARSITY'S SEVENTH, EIGHTH AND NINTH CLAIMS FOR RELIEF FOR INDUCING BREACH OF CONTRACTS AND BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED AS A MATTER OF LAW.

As noted above, Varsity's seventh, eighth and ninth claims for relief are vague and fail to allege enough facts to state a claim for relief that is plausible, more than "a formulaic recitation of a cause of action's elements" or suggest a right to relief above a speculative level.  In short, Varsity's allegations are conclusory or legal conclusions masquerading as factual allegations and therefore insufficient as a matter of law.

The United States District Court for the Eastern and Middle Districts of Tennessee have recently dismissed plaintiffs' claims of tortuous interference with a contract, both at common law and by statute, Tenn. Code Ann. § 47-50-109, for failure to state a claim upon which relief can be granted.  *See Garmley v. Opryland Hotel Nashville, LLC*, 2007 WL 4376078 (M.D. Tenn., Dec. 13, 2007)(Echols, J.); *Keith v. Aerus, LLC*, 2010 WL 3883434 (E.D. Tenn., Sept. 29, 2010)(Greer, J.); *Lamdin v. Aerotek Commercial Staffing and American Background Information Services, Inc.*, 2010 WL 3896154 (E.D. Tenn., Sept. 30, 2010)(Varlan, J.).

In *Lamdin,* the court quoted the statute and set forth the elements of a cause of action for procurement of a breach of contract in Tennessee as follows:

> Plaintiff has alleged against both defendants a statutory claim for procurement of a breach of contract. Section 47-50-109 of the Tennessee Code Annotated provides that:
>
> > It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach

28

or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract.

T.C.A. § 47-50-109.  The elements of a cause of action for procurement of a breach of contract in Tennessee are: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract.  *Myers v. Pickering Firm, Inc.,* 959 S.W.2d 152, 158 (Tenn.Ct.App.1997).  The Tennessee Supreme Court has held that, "[i]n order to recover for procurement of a breach of contract, the plaintiff must prove that, there was a legal contract for a designated term[.]"  *Forrester v. Stockstill,* 869 S.W.2d 328, 330 (Tenn.1994).  In contrast to a contract for a fixed term of employment, a contract for a designated term of employment, "may be terminated by [the] employer or employee for 'good case, bad cause, or no cause'" and such termination will not constitute a breach of contract.  *Fitzgerald v. Abbott,* No. M2008-00920-COA-R3-CV, 2009 Tenn.App. LEXIS 56, at *4 (Tenn. Ct.App. Feb 5, 2009).

2010 WL 38961 at page 5.  The court then dismissed the plaintiff's statutory claim because she "failed to allege the existence of a contract of employment for a designated term."

In *Garmley*, the court pointed out that the elements of a cause of action for a common law claim for tortuous interference with a contact were identical to the statutory cause of action, *citing Freeman Mgt. Corp. v. Shurgard Storage Ctrs., LLC,* 462 F.Supp.2d 629, 637 (M.D. Tenn. 2006), and that the differences between the two claims are that the statute allows an award of treble damages instated of punitive damages and that it requires a "clear showing" of liability instead of a simple preponderance of the evidence, *citing Cambio Health Solutions, LLC v. Reardon*, 234 Fed. App'x 331 (6th Cir. 2007).

In discussing the insufficiency of the plaintiff's allegations in *Keith*, the court stated as follows:

. . . [S]imple knowledge of the contract cannot be automatically equated with intent to induce a breach.  What plaintiff must allege is plausible facts to show an intent to ***induce*** a breach.  He has not done that here.  No factual allegations are made which establish the intent of Aerus to induce a breach of Keith's contract by EcoQuest.  That becomes fully obvious when one looks to the elements of the tort. In order to prevail, as set forth above, plaintiff must prove ***both*** knowledge of the contract ***and*** intent to induce as separate elements.  And plaintiff must allege facts which, if true, would establish each of the elements.  An allegation that defendants had knowledge of the contract and knowledge that their actions would result in a breach of contract is an insufficient factual allegation to establish both the knowledge and intent elements of the tort

2010 WL 3883434 page 4-5.

The same analysis applies to the allegations made by Varsity in the present case.  Varsity has implied that Star induced unnamed individuals to breach unspecified contacts with "one or more" unnamed manufacturers.  Varsity is similarly vague in its allegations in Paragraph 18 of the Complaint that "Defendant, acting independently or in a conspiracy with [unnamed] others" induced Rebecca Cook, "a Varsity ex-employee under a noncompetition agreement with Varsity customers to purchase cheerleading uniforms from Defendant."  And Varsity never elaborates its allegations of conspiracy.  *See* ¶ 87 ("Defendant has in concert and in conspiracy with one or more former employees of Varsity and third parties engaged in lawful acts to achieve an unlawful purpose, or alternatively, has engaged in unlawful acts to achieve a lawful purpose.") and ¶ 88 ("The above actions of Defendant constitute a civil conspiracy unlawful under the laws of the State of Tennessee.").

30

## CONCLUSION

Varsity's Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief can be granted.

Respectfully submitted,

HARRIS SHELTON
HANOVER WALSH, PLLC
By:  *s/Michael F. Rafferty*
Michael F. Rafferty, Tenn. Disc. No. 10092
Kannon C. Conway, Tenn. Disc. No. 23569
mrafferty@harrisshelton.com
kconway@harrisshelton.com
One Commerce Square, Suite 2700
Memphis, Tennessee 38103-2555
(901) 525-1455
Attorneys for Defendant Star Athletica, L.L.C.

FELDMAN LAW GROUP, P.C.
By:  *s/Steven M. Crosby*
Steven M. Crosby
Kalpana Nagampalli
smcrosby@feldman-law.com
kalpana@feldman-law.com
220 East 42nd Street, Suite 3304
New York, New York 10017
(212) 532-8585
Attorneys for Defendant Star Athletica, L.L.C.

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed through the Court's CM/ECF System and duly served through the electronic noticing system upon plaintiff's counsel, Grady M. Garrison and Adam S. Baldridge, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, 165 Madison Avenue, Suite 2000, Memphis, TN 38103, this 20th day of November, 2010.

*s/Michael F. Rafferty*