IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| VARSITY BRANDS, INC., VARSITY SPIRIT CORPORATION, and VARSITY FASHIONS & SUPPLIES, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:10-cv-02508 |
| STAR ATHLETICA, L.L.C., | ) ) ) | |
| Defendant. | ) | |

ORDER DENYING DEFENDANT
STAR ATHLETICA, L.L.C.'S MOTION TO DISMISS

Before the Court is Defendant Star Athletica, L.L.C.'s motion to dismiss for failure to state a claim upon which relief may be granted, filed November 20, 2010, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. #34.) Plaintiffs Varsity Brands, Inc., Varsity Sprit Corporation, and Varsity Fashions & Supplies, Inc., filed a response in opposition on December 29, 2010. Plaintiffs sue Defendant for copyright infringement, violation of the Lanham Act, and claims of unfair competition, inducing breach of contract, inducing breach of fiduciary duty, and civil conspiracy under Tennessee law. Plaintiffs allege that Defendant has copied and marketed cheerleading uniforms that infringe Plaintiffs' original copyright-protected designs, adopted product naming conventions and style codes that mimic Plaintiffs', induced Plaintiffs' employees to violate valid noncompete agreements, and conspired with exiting employees to misappropriate Plaintiffs' proprietary information in order to provide it to Defendant.

In its motion to dismiss, Defendant argues that the registered copyrights Plaintiffs contend cover their cheerleading uniform designs in fact only cover the two-dimensional pictures Plaintiffs registered with the United States Copyright Office. Defendant further argues that Plaintiffs' suit attempts to impermissibly assert copyright protection in "useful articles." The Court concludes that the designs over which Plaintiffs assert copyright protection are separable from the useful articles to which they are attached and thus Plaintiffs may validly preclude reproduction of their cheerleading uniform designs on a competitor's uniforms. The Court further concludes that Plaintiffs' complaint alleges sufficient facts to state a plausible claim for relief under the Lanham Act for mimicking its naming conventions and style codes. Finally, the Court concludes that Plaintiffs' complaint sufficiently alleges causes of action under Tennessee law for Defendant's alleged mimicking of Plaintiffs' naming conventions and style codes and for Defendant's alleged inducement of employees to misappropriate proprietary information and violate their noncompete agreements. Therefore, Defendant's motion to dismiss is **DENIED**.

**I. BACKGROUND**[1]

Varsity Brands, Inc., is a Delaware corporation, Varsity Spirit Corporation is a Tennessee corporation, and Varsity Spirit Fashions & Supplies, Inc., is a Minnesota corporation (collectively, "Varsity"). (Pls.' Compl. ¶¶ 1-3.)[2]  Each corporation has its principal place of business in Memphis, Tennessee.[3] (Id.)  Star Athletica ("Star") is a limited liability company

---

[1] The following factual recitation is taken from Varsity's complaint and is assumed to be true for purposes of this motion only.

[2] On April 6, 2011, Varsity filed its First Amended Complaint making minor technical changes to certain of the paragraphs relevant to one of Varsity's allegations of copyright infringement. Because these changes had no effect on the arguments presented in Star's motion, the Court will continue to refer to the original complaint in resolving the instant motion to dismiss.

[3] The precise interrelationship of these three corporations is not evident from the complaint and is not relevant for purposes of the instant motion. The Court will hereafter discuss all three corporations as if they were a single entity.

organized under the laws of the state of Missouri with its principal place of business in Chesterfield, Missouri. (Id. ¶ 5.)

Varsity is engaged in the business of designing, manufacturing, and selling apparel and accessories for cheerleading and related activities. (Id. ¶ 8.) To create high-quality products, Varsity employs a team of designers to develop original, two-dimensional designs that are reproduced and applied to Varsity's apparel and accessories. (Id. ¶ 9.) Further, to market its uniforms and accessories, Varsity annually employs models, photographers, and graphic designers for the production of full-color catalogs featuring its products. (Id. ¶ 12.)

Star is one of Varsity's competitors. (Id. ¶ 16.) Like Varsity, Star markets its products through catalogues, which it makes available on the internet and distributes through sales representatives and the mail. (Id. ¶ 13.) Without Varsity's permission, license, or consent, Star copied several Varsity designs for cheerleading uniforms and is now marketing those designs online and in its print catalogues. (Id. ¶ 14.) Each of the five designs at issue in this case generally consists of patterns of colored stripes that are applied to Varsity's uniforms. (See Exs. 1, 5, 7, and 9 to Pls.' Compl.) The designs are the subject of copyrights registered with the United States Copyright Office under Registration Nos. VA 1-417-427, VA 1-675-905, VA 1-319-228, VA 1-319-226, and VA 1-411-535. (Pls.' Compl. ¶¶ 28, 34, 41, 48, 55.)

Varsity formerly maintained a supply agreement with R.J. Liebe Athletic Lettering Company ("R.J. Liebe"). (See id. ¶ 16.) In retaliation for Varsity's termination of that agreement, R.J. Liebe began to compete with Varsity in the sale of cheerleading uniforms and related accessories. (Id.) Acting in concert with R.J. Liebe's President and Chief Manager, Star[4] induced current and former Varsity employees in Memphis to aid Star in manufacturing cheerleading uniforms and accessories in violation of the employees' noncompete agreements.

---

[4] The precise relationship between Star and R.J. Liebe is not apparent from Varsity's complaint.

(Id. ¶ 17.)  Specifically, Star induced former Varsity employee Rebecca Cook to solicit Varsity customers to purchase uniforms from Star in violation of her noncompete agreement with Varsity.  (Id. ¶ 18.)

Further, Star encouraged Kerry Leake—either while employed by Varsity or after termination and while subject to a noncompete agreement—to steal the electronic files Varsity used to create its outline mascot letterings and monogramming.  (Id. ¶ 19.)  Star then used these electronic files to develop mascot letterings and monogramming that copied Varsity's designs.  (Id.)  In naming its outline mascot designs, Star adopted a convention that mimics Varsity's.  (Id. ¶ 20.)  For example, the Varsity design known as "ECM-1" corresponds to Star design "EOM-1."  (Id.)  Star even omits numbers when necessary to keep its naming system aligned with Varsity's.  (Id.)  Thus, Star's outline mascot names jump from "EOM-17" to "EOM-20," just as the names jump in Varsity's naming convention.  (Id.)  Moreover, some of Star's mascot designs duplicate Varsity designs that were previously not publicly available and were instead contained only in the internal Varsity files that Mr. Leake provided to Star.  (Id.)

Star further obtained from R.J. Liebe 80,000 electronic tackle twill files owned and supplied by Varsity.  (Id. ¶ 21.)  Star then selected style codes for its tackle twill offerings that are either identical or deceptively similar to Varsity's style codes.  (Id. ¶ 22.)  Star, for example, uses the codes "TTCRAZ," "TTPAW," "TTMEG," and "TTCHV," which are identical to the codes used by Varsity.  (Id.)  The majority of Star's other style codes are very similar to Varsity's codes.  (Id.)

Both during his employment with Varsity and after his employment was terminated, Mr. Leake provided Star access to Varsity's proprietary uniform patterns and other proprietary information in order to aid Star in competing with Varsity.  (Id. ¶ 23.)  Either independently or

4

through Mr. Leake, Star also induced one or more of Varsity's uniform manufacturers to produce cheerleading uniforms for Star in violation of their contracts with Varsity. (Id. ¶ 24.)

Varsity's legal counsel sent Star a cease and desist letter on March 4, 2010. (Id. ¶ 25.) On March 8, 2010, Star's counsel rejected Varsity's demands. (Id. ¶ 26.) Varsity filed the instant suit in the United States District Court for the Western District of Tennessee on July 9, 2010. The first five counts of Varsity's complaint allege infringement of Varsity's copyrighted designs for cheerleading uniforms. Additionally, Varsity asserts causes of action for violation of the Lanham Act, unfair competition under Tennessee common law, inducing breach of contract under both Tenn. Code Ann. § 47-50-109 and Tennessee common law, inducing breach of fiduciary duty under Tennessee common law, and civil conspiracy under Tennessee common law. Varsity seeks money damages, attorney fees and costs, impoundment of the infringing goods, and an injunction against further infringement.

## II. LEGAL STANDARD

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure only tests whether a cognizable claim has been pled. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). To determine whether a motion to dismiss should be granted, the court examines the complaint, which must contain a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2). It must also provide the defendant with fair notice of the plaintiff's claim as well as the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not suffice. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007); see also Scheid, 859 F.2d at 436-37.

Likewise, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555 (citation omitted). The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge. Twombly, 550 U.S. at 561; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). On a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations made in the complaint and construes them in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983). The court, however, only takes as true well-pled facts, and it will not accept legal conclusions or unwarranted factual inferences. Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998); see Iqbal, 129 S. Ct. at 1949.

### III. ANALYSIS

### A. Claim for Copyright Infringement

Article I, § 8, clause 8 of the United States Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to that power, Congress has enacted Title 17 of the United States Code with the goal of protecting copyrights in authors' creative works. Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 316 (6th Cir. 2004). "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now

known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories: (1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works." 17 U.S.C. § 102(a). Subject to limited exceptions, only the holder of a copyright or a licensee of the copyright owner is entitled "to reproduce the protected work, to prepare derivative works, and to distribute copies to the public." Murray Hill Publ'ns, Inc., 361 F.3d at 316 (citing 17 U.S.C. § 106(1)-(3)). Section 501 of Title 17 imposes liability on anyone who infringes the exclusive rights of a copyright owner. 17 U.S.C. § 501; Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir. 2004). "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir. 2003) (citing Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984)).

With respect to Varsity's copyright infringement claims, Star argues that Varsity fails to state a cause of action because Varsity's copyright registrations grant protection only to the specific pictures Varsity registered with the Copyright Office. Thus, Star asserts that when Varsity registered pictures of cheerleading uniforms, Varsity only acquired copyright protection in the exact pictures of the uniforms registered, not in the designs of the cheerleading uniforms depicted. Because Star has produced no uniforms bearing copies of the pictures registered, Star contends that Varsity fails to allege a claim of copyright infringement. Instead, Star contends that, since Varsity's designs are not separable from the utilitarian aspect of its uniforms, the

current lawsuit is an attempt by Varsity to use its registered copyrights to gain protection in fashion or dress designs, which copyright law does not allow.

### 1. *Presumption of Validity*

Varsity avers that all but two of the copyrighted designs at issue were registered with the Copyright Office within five years "after first publication" and that the copyrights of those designs are thereby entitled to a presumption of validity under 17 U.S.C. § 410(c).[5]  See Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C., No. 3:08-cv-00159, 2010 WL 2253541, at *13 (M.D. Tenn. May 30, 2010) (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 552, 534 (6th Cir. 2004)) ("[I]t is well established under Sixth Circuit precedent that both the originality and the non-functionality of a copyrighted work are presumptively established by copyright registration.").[6]  Varsity registered one of the remaining two designs five years and six months after first publication and the other six years and four months after first publication. Therefore, under § 410(c), the evidentiary weight for these two copyrights is "within the discretion of the court." 17 U.S.C. § 410(c).  Since it registered these works not long after the passage of five years, Varsity urges the Court to accord them a presumption of validity as well. Even without the presumption as to several of the copyrighted designs, however, the Court finds that Varsity's complaint sufficiently alleges copying of subject matter that is legitimately eligible for copyright protection.

---

[5] Section 410(c) of Title 17 reads as follows: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

[6] Varsity represents in its response that the Copyright Office initially refused to register some designs Varsity submitted that were similar to those at issue in this case, but that the Copyright Office then re-reviewed the submissions and determined that they were copyrightable.  Because these facts are not contained in Varsity's complaint, the Court will not rely on them in deciding this motion under Rule 12(b)(6).  Cf. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

### *2. Fabric Designs as Copyrightable Works*

Varsity urges the Court to reject Star's contention that Varsity's copyrights extend only to the exact two-dimensional pictures registered and that its copyrights do not preclude Star's unauthorized manufacture of uniforms similar to those shown in the pictures. Star correctly notes that, because clothing is a useful article,[7] it is normally not subject to copyright protection, even if the "the appearance of the useful article is determined by aesthetic considerations." 56 Fed. Reg. 56530-02 (Nov. 5, 1991). Thus, dress designs are not eligible for copyright protection. Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 455 (2d Cir. 1989) ("We have long held that clothes, as useful articles, are not copyrightable.") (citations omitted). Fabric designs, however, are to be distinguished from "dress designs" and are copyrightable. Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 763 (2d Cir. 1991) (citations omitted).

Although Star concedes that fabric designs are copyrightable, it asserts that a copyright in fabric design extends only to the two-dimensional design itself. Contrary to Star's assertions, incorporating copyright-protected elements of a two-dimensional design into a three-dimensional piece of clothing is generally a form of copying proscribed by copyright law. See Eliya, Inc. v. Kohl's Dep't Stores, No. 06 Civ 195(GEL), 2006 WL 2645196, at *8-12 (S.D.N.Y. Sept. 13, 2006) (finding that design elements of a shoe could qualify for copyright protection but that form and function were blended in the design of the shoe at issue such that the design elements of the shoe were no longer subject to copyright); cf. Winfield Collection, Ltd. v. Gemmy Indus. Corp., 147 F. App'x 547, 551-52 (6th Cir. 2005) (recognizing infringement where three-dimensional item is made representing item from two-dimensional picture protected by copyright). Therefore, it is no defense to say that the picture Varsity registered with the Copyright Office is

---

[7] A "useful article" for purposes of copyright law is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article.'" 17 U.S.C. § 101.

not duplicated on an item of clothing. Instead, it is sufficient for a claim of copyright infringement if an item of clothing copies the clothing shown in the picture—provided the item of clothing in the picture includes copyright-protectable elements and does not merely depict a useful article. "[T]he crucial issue in determining the[] copyrightability [of elements found in useful articles] is whether they possess artistic or aesthetic features that are physically or conceptually separable from their utilitarian dimension." Carol Barnhart, Inc. v. Economy Cover Corp., 773 F.2d 411, 414 (2d Cir. 1985); see, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983) ("[B]ecause we conclude that the *Air Coupe* is not a 'useful article,' we need not consider whether certain aspects of the item are copyrightable individually as separate and independent features. This provision applies only to items that are first, as a whole, disallowed copyright protection as 'useful articles,' and thus has no application to the present case.").

### 3. *Merger and Separability*

Star asserts that Varsity's fabric designs are not separable from the useful articles (i.e., clothing) to which they are applied and that a "merger of form and function" thereby occurs in which any otherwise copyrightable designs lose their distinctness from the underlying utilitarian article. For support, Star relies on the noted Second Circuit case of Brandir International, Inc. v. Cascade Pacific Lumber Co., 834 F.2d 1142 (2d Cir. 1987). In Brandir, the Second Circuit held that a bike rack with a ribbon-like design was not subject to copyright protection because "[f]orm and function are inextricably intertwined in the rack, its ultimate design being as much the result of utilitarian pressures as aesthetic choices." 834 F.2d 1142, 1147 (2d Cir. 1987). The copyrighted designs at issue in this case, however, are quite different from the bike rack at issue in Brandir. The designs of Varsity's cheerleading uniforms, as they are described in Varsity's

complaint, are not dictated by "utilitarian pressures," but are intended to enhance the aesthetic, rather than utilitarian, aspects of the uniforms it markets. In such a situation, the earlier Second Circuit decision in Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989 (2d Cir. 1980), is the more factually analogous case. In Kieselstein-Cord, the Second Circuit concluded that an ornate belt buckle design qualified for copyright protection because the design was conceptually separable from the belt's utilitarian function. 632 F.2d 989, 993-94 (2d Cir. 1980). Likewise, the elements Varsity describes as protected by copyright are separable from the uniforms' utilitarian function as clothing.[8] See Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 328 (2d Cir. 2005) ("[I]f a useful article incorporates a design element that is physically or conceptually separable from the underlying product, the element is eligible for copyright protection."). Because Varsity's designs are separable, Varsity may validly assert copyright protection over the designs, and Star's motion to dismiss Varsity's copyright infringement claims is denied.

**B. Varsity's Lanham Act Claim**

The Lanham Act, in pertinent part, prohibits the commercial use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of

---

[8] Star also argues that the Court should disallow copyright protection in Varsity's designs because they are not "separately marketable." The test on which Star relies was developed by the Fifth Circuit in Galiano v. Harrah's Operating Co., Inc., 416 F.3d 411 (5th Cir. 2005). At issue in Galiano were casino uniforms, which the appellate court determined were not separately marketable other than as casino uniforms and thus were only useful articles. 416 F.3d 411, 422 (5th Cir. 2005). The court recognized that fabric design is usually subject to copyright protection and articulated a "likelihood-of-marketability" test "*for garment design only*" covering "the shape, style, cut and dimensions for converting fabric into a finished dress or other clothing garment." Id. at 419, 421 (emphasis in original). As discussed above, the instant case concerns fabric design, which does not fall within the ambit of "garment design" as discussed by the Fifth Circuit. Accordingly, the Fifth Circuit's "likelihood-of-marketability" test is inapplicable to the instant case.

11

his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(A)-(B). The Sixth Circuit has explained that marks "described as 'arbitrary,' 'fanciful,' or 'suggestive' are 'inherently distinctive' and protectable" under trademark law, while "[a] so-called 'generic' mark may never qualify for trademark protection." Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504, 513 (6th Cir. 2007) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)). "Between these two poles lie 'descriptive' marks. Marks that are descriptive are not inherently distinctive but may enjoy the benefit of protection if they develop a 'secondary meaning.'" Id. (citations and footnote omitted).

Although Star reads Varsity's complaint as alleging that the copying of its cheerleading uniforms violated the Lanham Act, Varsity's Lanham Act claim is premised on Star's adoption of Varsity's naming conventions and style codes. Varsity alleges that these conventions and codes are protected under the Lanham Act because they are closely associated with Varsity's products. Whether these conventions and codes are merely generic and thus unprotected or whether they are truly descriptive marks with secondary meanings must be determined as a matter of proof, not pleading, and thus cannot be resolved on a Rule 12(b)(6) motion to dismiss. Therefore, Star's motion to dimiss Varsity's Lanham Act claim is denied.

**C. Varsity's State Law Causes of Action**

In addition to arguing that Varsity's complaint fails to sufficiently allege federal law causes of action for copyright infringement and violation of the Lanham Act, Star also urges the Court to dismiss Varsity's state law claims for relief. First, Star broadly argues that Varsity's remaining allegations are "bare bones" and incoherent and thereby fail to describe a plausible

12

claim for relief in accordance with Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal. The Court, however, finds that the remaining allegations must be considered specifically rather than generally. After separately considering each of the remaining counts of Varsity's complaint, the Court finds that Varsity's causes of action sufficiently meet the Twombly standard, thus precluding dismissal under Rule 12(b)(6).

### 1. Unfair Competition

Star argues that Varsity's claim for unfair competition under Tennessee law must be dismissed because Varsity's complaint fails to allege that Star engaged in any of the various types of conduct recognized as actionable, unfair competition under Tennessee law. See B & L Corp. v. Thomas & Thorngren, Inc., 917 S.W.2d 674, 681 (Tenn. Ct. App. 1995) (citing Prosser and Keeton on the Law of Torts § 130, at 1013 (5th ed. 1984)) ("Unfair competition is a generic name for several related torts involving improper interference with business prospects."). Varsity's response makes clear that it seeks relief for unfair competition only under a "passing off" theory. To establish a claim of unfair competition by means of "passing off," the plaintiff must prove that "(1) the defendant engaged in conduct which 'passed off' its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or [the] authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or the authority of its organization." Dade Int'l, Inc. v. Iverson, 9 F. Supp. 2d 858, 861 (M.D. Tenn. 1998) (quoting Sovereign Order of St. John v. Grady, 119 F.3d 1236, 1243 (6th Cir. 1997)). Notwithstanding Star's assertion that Varsity fails to allege facts supporting a "passing off" claim, Varsity's complaint alleges that Star developed and utilized mascot naming conventions and style codes that are deceptively similar to Varsity's as part of marketing

13

uniforms that incorporate Varsity's copyrighted uniform designs.  Although Varsity's complaint does not allege that the public was actually deceived, the Court finds that, given the other extensive factual allegations of Varsity's complaint, an allegation of public deception can be reasonably inferred in this case.  Therefore, Varsity's allegations are facially plausible and sufficient to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim.[9]

### 2. Inducing Breach of Contract[10]

Star next contends that Varsity's complaint fails to establish either a statutory or common law claim for inducing breach of contract.  "Under Tennessee law, there are seven elements to an action for inducement to breach a contract, both at common law and under T.C.A. § 47-50-109. These elements are also necessary to establish a cause of action for conspiracy to induce a breach of contract. The plaintiff must prove: (1) that there was a legal contract; (2) that the wrongdoer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach."  TSC Indus., Inc. v. Tomlin, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987).  Despite Star's assertion that Varsity's complaint is vague and lacking in detail, its complaint specifically avers that Star knowingly induced Rebecca Cook and Kerry Leake to violate their noncompete agreements so that Star could obtain a competitive advantage by exploiting Varsity's proprietary

---

[9] Star also asserts that Varsity's state law claim for unfair competition is preempted by federal copyright law. Because Varsity's unfair competition claim is entirely separate from the factual allegations that support its copyright claims, the Court finds this argument to be without merit.

[10] Nowhere in its memorandum in support of its motion to dismiss does Star specifically address Varsity's breach of fiduciary duty claim.

information. Accordingly, Varsity's complaint sufficiently alleges inducement to breach of contract under both the common law and Tenn. Code Ann. § 47-50-109.[11]

### 3. Civil Conspiracy

Finally, Star asserts that Varsity's civil conspiracy claim must be dismissed because Varsity has not alleged this cause of action with the requisite specificity. "The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing Morgan v. Brush Wellman, Inc., 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)); see O'Dell v. O'Dell, 303 S.W.3d 694, 697 (Tenn. Ct. App. 2008). In the instant case, Varsity's complaint clearly alleges that Star acted in concert with Rebecca Cook, Kerry Leake, and possibly other employees through improper means—including breach of contract and breach of fiduciary duty—to exploit Varsity's intellectual property and proprietary information for Star's enrichment at Varsity's expense. This suffices to allege a claim for civil conspiracy under Tennessee law and is sufficiently detailed to satisfy Rule 8(a) of the Federal Rules of Civil Procedure. Accordingly, Star's motion to dismiss is denied as to Varsity's civil conspiracy claim.

---

[11] Varsity clarifies in its response that it is not currently pursuing a claim for breach of contract as to any breach by uniform manufacturers of their contracts with Varsity.

**IV. CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendant Star Athletica, L.L.C.'s motion to dismiss.

**IT IS SO ORDERED**, this the 21st day of April, 2011.

                                                s/Bernice Bouie Donald
                                                **BERNICE BOUIE DONALD**
                                                **UNITED STATES DISTRICT JUDGE**