**(UNREDACTED)**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

---------------------------------------------------

VARSITY BRANDS, INC.,            )
VARSITY SPIRIT CORPORATION and )
VARSITY SPIRIT FASHIONS &         )
SUPPLIES, INC.,                   )
                                  )
            Plaintiffs,          )
                                  )
        VS.                       )   NO. 10-02508
                                  )
STAR ATHLETICA, L.L.C.,           )
                                  )
            Defendant.           )


---------------------------------------------------




MOTION HEARING

BEFORE THE

HONORABLE CHARMIANE G. CLAXTON, MAGISTRATE JUDGE

WEDNESDAY MORNING

MARCH 28, 2012






LYNN DUDLEY
TRANSCRIBER
MEMPHIS, TENNESSEE

2

A P P E A R A N C E S

Appearing on behalf of the Plaintiffs :

          BAKER, DONELSON, BEARMAN
          CALDWELL & BERKOWITZ, P.C.
          165 MADISON AVENUE
          SUITE 2000
          MEMPHIS, TENNESSEE 38103
          BY:  ADAM S. BALDRIDGE, ESQ.
               BRADLEY E. TRAMMELL, ESQ.
               GRADY M. GARRISON, ESQ.
               ATTORNEYS AT LAW

Appearing on behalf of the Defendant:

          KILGORE & KILGORE, PLLC
          3109 CARLISLE
          DALLAS, TEXAS 75204
          BY:  THEODORE C. ANDERSON, ESQ.
               ATTORNEY AT LAW

Appearing on behalf of the Defendant:

          FELDMAN LAW GROUP, PC
          220 EAST 42ND STREET
          SUITE 3304
          NEW YORK, NEW YORK 10017
          BY:  STEVEN M. CROSBY, ESQ.
               ATTORNEY AT LAW

Appearing on behalf of the Defendant:

          HARRIS, SHELTON, DUNLAP AND COBB
          2700 ONE COMMERCE SQUARE
          MEMPHIS, TENNESSEE 3810
          BY:  MICHAEL F. RAFFERTY, ESQ.
               ATTORNEY AT LAW

3

## W I T N E S S   I N D E X

**WITNESS**                                                    **PAGE   LINE**

NO WITNESSES

4

## E X H I B I T   I N D E X

**EXHIBIT NUMBER**                                          **PAGE    LINE**

NO EXHIBITS

**WEDNESDAY MORNING**

**MARCH 28, 2012**

The motion hearing in this case began on this date, Wednesday, March 28, 2012, at 10 o'clock a.m., when and where evidence was introduced and proceedings were had as follows:


------------------------


**THE COURT:** I was starting to get worried, Mr. Garrison, I was going to call your motion and let them continue to consult.

All right. Where do we stand?

**MR. BALDRIDGE:** Good morning, Your Honor.

**THE COURT:** Good morning, Mr. Baldridge.

**MR. BALDRIDGE:** I have good news --

**THE COURT:** All right.

**MR. BALDRIDGE:** -- I think we resolved the two motions to compel --

**THE COURT:** Excellent.

**MR. BALDRIDGE:** -- for the most part. And I want to, you know, kind of let the court know what the parties have done.

First, with regard to Star Athletica's motion to compel.

THE COURT:  Okay.

MR. BALDRIDGE:  I think we got it narrowed down to just a few categories of things that we can do, the first is Varsity is going to go back and look for training manuals and quality assurance and construction manuals.

And, Your Honor, the hope is that's not a room full of documents, we don't think it will be, they don't think it is going to be either.  And so, if it ends up being that, we may have to limit that to more representative samples, but I think that Mr. Crosby's points, it's probably just an annual document.

THE COURT:  Okay.

MR. BALDRIDGE:  It's not going to be some monstrous production.

THE COURT:  Let me make sure I'm on the same page with you all.

This is -- this is docket 110 or is this docket 85 we're talking about.

MR. BALDRIDGE:  It's 110.

THE COURT:  Very good, just wanted to make sure we're on the same page.

All right.  So Varsity is going to go back and look for instruction manuals and quality

assurance information and get them.

Okay.

MR. CROSBY: Right. Correct, Your Honor.

THE COURT: All right.

MR. BALDRIDGE: The manuals themselves.

The second thing, Your Honor, is Varsity is going to produce to Star Athletica the correspondence with the copyright office.

THE COURT: Okay.

MR. BALDRIDGE: On all the other design that it has, you know, that -- not the five -- we have already done it for the five at issue --

THE COURT: Uh-huh.

MR. BALDRIDGE: -- to the extent there were any such documents, and we are going to do it for the other designs that Varsity has where there was a rejection by the copyright office and a request for reconsideration by Varsity. And we will produce all of the correspondence that relates to that -- to those designs that were correspondence between Varsity and the copyright office.

THE COURT: Okay.

MR. BALDRIDGE: And the third thing, Your Honor, is we're going to go back and look for more e-mails regarding the designs, the five designs at

issue.

Your Honor, we've previously done a search for the designs and we captured a lot of e-mails, but I agree we go back and check to see if there are anymore and see if we can't locate some that go back -- and some of these design creations go back to 1998, so there's some old things, you know the e-mails may not exist because that was a long time ago, but, you know, we will go back and make sure that whatever we have has been produced on the five designs at issue.

MR. CROSBY: And certainly if there's no e-mails, so that and we wouldn't want that to be limited just to e-mails, it could be memos or documents or correspondence back and forth between the departments and between the contract manufacturers pertaining to the five designs at issue going back and forth between these departments and to the design department and production or pattern makers, and pattern makers and productions or any of those and the contract manufacturers.

MR. BALDRIDGE: Your Honor, and I think that's fine. The five designs at issue, we have already done a search for each of the design numbers through all of Varsity's e-mails and we produced

what we located, but we will go back and check to see if we can't locate even more.

THE COURT:  And you're talking -- and you're are also putting memos and --

MR. BALDRIDGE:  Right.

THE COURT:  Okay.

MR. BALDRIDGE:  Right, Your Honor, and I think that -- yes, we will go back and check, you know, files, not just --

THE COURT:  Okay.

MR. BALDRIDGE:  -- e-mails, but -- but files that are not at issue.

And I think that will resolve Star Athletica's motion to compel.

THE COURT:  Okay.

MR. CROSBY:  The -- the reasons that we are looking at these other concerns in terms of e-mails and internal correspondence and instructions is because there hadn't been sufficient documentation produced of the five designs at issue, so we had to start to look at these other designs to see similar construction properties so we could get our answers elsewhere.

THE COURT:  Okay.

MR. CROSBY:  But the plaintiffs are going

to go back and look for those documents and producing all of those issues.

THE COURT: Here's what we will do, for the purposes of the order, if you'll draft the order with regard to 110 --

MR. CROSBY: Uh-huh.

THE COURT: -- run it by Mr. Baldridge and then send that to the court's ECF box for entry because I'd be more comfortable having you all actually put in what you've agreed to rather than me writing from my -- my notes and recollection --

MR. CROSBY: Certainly, Your Honor, that would be --

THE COURT: And that way -- that way it will cut down any -- any dispute or misunderstanding about what is -- what will be produced and looked for. Okay.

MR. CROSBY: Very good.

THE COURT: All right. So that takes care of 110.

All right. And then 84.

MR. BALDRIDGE: Correct, Your Honor, I think that's Varsity's motion to compel. And I think the issues there can easily be resolved, we discussed those as well.

Part of the problem back then was that there weren't a lot of documents produced and we were afraid that they were not producing documents based on -- the parties obviously have a very different opinion as to fabric designs, and garment designs and all that, and so they objected and that's fine, but we were getting the sense that things may have been withheld based upon their view of the merits and our view of the merits.

And Mr. Crosby has represented to me today, and I just, you know, ask that he represent to the court that there are documents being withheld, even though those objections were made because those objections are still in their document responses and I'd just -- we'll feel confident, more comfortable if we can go back and tell the client that things have not been withheld.

**MR. CROSBY:** Certainly those -- those document objections will always be there in Star's responses, they go to the heart of the subject matter in the case. But I pointed out, and Mr. Baldridge acknowledged, today that the very first five items Bate-stamped Star one through five that we produced were garment samples for the five designs at issue. So we have no intention of

withholding documents based on the parties different positions on whether or not the fact of the subject matter in dispute is garment designs or fabric designs.

THE COURT: But now -- all right, so that -- that -- that deals with the request for production of documents and things, but what about the interrogatories?

MR. BALDRIDGE: And, Your Honor, just a couple of more things on the documents.

THE COURT: Okay.

MR. BALDRIDGE: And Mr. Crosby, you know, he's told me there are actually some operating agreements for Star Athletica, LLC they haven't previously seen, so we're going to go back and check. And I think you're going --

MR. CROSBY: I believe that they -- they've been produced in our recent production.

And it's for any agreement from 2012, one did not exist before that.

THE COURT: Okay.

MR. BALDRIDGE: And, Your Honor, that the documents regarding -- really e-mail correspondence regarding the website and www.staratheltica.com.

THE COURT: Uh-huh.

**MR. BALDRIDGE:** And we talked about those, also, and he said that he thought all the e-mails regarding that website had been produced --

**THE COURT:** Okay.

**MR. BALDRIDGE:** -- to Varsity.

And then finally, Your Honor, the meeting minutes which Varsity asked for, Mr. Crosby told me there were none.

**THE COURT:** Okay.

**MR. CROSBY:** I don't believe there are any.

**THE COURT:** Okay.

**MR. CROSBY:** Star Athletica is a very small start-up, and there's really not a management staff there.

**THE COURT:** Okay. All right.

**MR. BALDRIDGE:** And, Your Honor, that concludes the document production. The interrogatories have been supplemented a couple of times --

**THE COURT:** Right.

**MR. BALDRIDGE:** -- since we filed our motion to compel.

**THE COURT:** Okay.

**MR. BALDRIDGE:** I think for the most part

those are something that we can work with now.

THE COURT:  Okay.

MR. BALDRIDGE:  I don't want to burden the court with piecemealing those out.  I think that the deposition should take care of any remaining deficiencies, and I think the same thing for the request for admission, Your Honor.

THE COURT:  Very good.  Very good.

All right, then, Mr. Baldridge, if you will draft the proposed order with regard to 84 and -- and then run that by Mr. Crosby and submit it to the court.

Yes, sir.

MR. RAFFERTY:  Your Honor, I -- I was remiss in not introducing to the court Mr. Anderson.

THE COURT:  Sure.

MR. RAFFERTY:  And we sort of launched in to this proceeding without introducing Mr. Crosby.

And this is Steve Crosby from New York, Your Honor, he also represents Star Athletica in this matter.

THE COURT:  Very good, welcome, sir.

MR. RAFFERTY:  Just for the record I wanted to make sure that the court knew who was speaking to them and for the purpose of the record.

THE COURT:  Excellent, thank you, sir.

All right.  And so that leaves us with 97 and 98 which are pretty much tied together.  It's a question of precluding expert testimony and then the question of extension of time to disclose depending on how -- how nice it works out.

Mr. Garrison.

MR. GARRISON:  Yes, Your Honor.  Thanks for taking the time to hear us today.

THE COURT:  Certainly.

I'm sorry for the delay, thank you all for your understanding of moving this to this week from last week, I had a -- I had a matter that was airlifted on to my calendar and it's rather much like being an associate in a law firm again where the partner gives you something to do, you do it and say yes, sir, make everything else shift around to make it work.  So thank you all for understanding and being able to be here today.

MR. GARRISON:  Your Honor, I think the court can gather from the conversations that have just been taking place that the central issue of this case is whether we're dealing with fabric designs, that is, two dimensional artwork --

THE COURT:  Uh-huh.

**MR. GARRISON:** -- that appears on uniforms or whether we're talking about garment designs, that is, the uniforms themselves.

**THE COURT:** If -- if I can ask you a quick question.

**MR. GARRISON:** Yes.

**THE COURT:** And do my best Supreme Court imitation and dive in before you can make your statement.

I went back and I looked at orders that Judge Donald entered last year, the order denying Star's motion to dismiss and then the order denying in part, and in pertinent part it was denying Varsity's motion to dismiss Star's counterclaim.

And in a sense the court has basically said that each party has the right to make these arguments, in other words, Varsity has the right to say, look, the copyright office has -- has registered these -- these items as -- as being protectable, and there is a presumption that they are -- they are protected, that it is valid for protection. And certainly that is the ultimate issue in the case and it would not be appropriate to decide, but certainly on the -- on the face of the complaint that Varsity has -- has made that

17

threshold out.

On the other hand, the court also said that with regard to the issue of separability that that was still available as an argument to make.

The court found that Star sufficiently pled the counterclaim for declaratory judgment on the issue of whether the copyright-ability of the two dimensional design with regarding versus useful articles.

So, I guess what that brings to my mind then is that as we look at your motion to preclude the testimony of the experts, it -- it appears that your -- that Varsity's issue with these experts is that they're offering testimony regarding effectively a claim that the court has said that Star can make.

MR. GARRISON: Well, Your Honor, some background there.

THE COURT: Okay.

MR. GARRISON: We start with the draft of the copyright registrations by the copyright office.

THE COURT: Uh-huh.

MR. GARRISON: Which presumptively at that stage establishes originality of the designs, separability of the designs and non-functionality of

designs.

Then we come to the complaint that was filed in which claims were made for copyright infringement of fabric designs, two dimensional designs, it's very clear that that's what the claim is about --

THE COURT:  Uh-huh.

MR. GARRISON:  -- not about uniform designs.

And it's interesting, for the purposes of that motion to dismiss the complaint that was filed by the defendant, the court took as true the allegations of the complaint and held that the designs were separable --

THE COURT:  Uh-huh.

MR. GARRISON:  -- at that stage in the process.

And now we are also looking at it in the other way when we file our motion to dismiss the counterclaim, which was almost completely successful, but the court thereto did for the defendant what it did for us with respect to the complaint --

THE COURT:  Uh-huh.

MR. GARRISON:  -- left open the

possibility that the defendant could prove that the designs were not separable.

**THE COURT:** Right.

**MR. GARRISON:** But there is no question about that.

**THE COURT:** Okay.

**MR. GARRISON:** So our problem with the experts is not that separability is not an issue in the case, it so clearly is, the problem is that the experts cannot opine on separability per se.

Separability is a legal conclusion to be drawn by the court or not. Just as non-functionality is a legal conclusion to be drawn by the court or not.

I can refer the court -- court to, you know, our papers in which we, you know --

**THE COURT:** But why can't the expert say to the jury, these are some of the things that you look at, and from the standpoint of an expert because let's face it --

**MR. GARRISON:** Uh-huh.

**THE COURT:** -- you know, aside from folks who do this all day everyday, we -- lay people tend to look at -- surely their costume contemplates separability of the chevron, and so why would not it

be appropriate under 702 for an expert to point out these are the elements that we look for in determining separability.  And -- and why would it be different from any other expert that opines.

When you have a medical malpractice case, you have -- you have an expert that's saying, you know, and to a degree of medical certainty I am going to opine that this doctor did not do his job, which is the ultimate decision in the case, but it's just that expert's opinion and there's going to be an instruction that says that's his opinion, you're not to necessarily take it as a decision, but simply as something to help you.

**MR. GARRISON:**  Well, there are several problems with the proposed expert testimony, Your Honor.

**THE COURT:**  Okay.

**MR. GARRISON:**  One is that we have on the one hand who is to be drawing that legal conclusion.

These experts opine as to the legal conclusions of no separability and non-functionality.  That's completely different from the portions of their reports that talk about sewing and stitching and braids, and how cheerleading uniforms are constructed and put together.  There's

no objection to that kind of testimony being talked about, but for them to go from there and to conclude the ultimate issue of nonseparabil -- of separate -- non-separability or non-functionality, they're invading there the province of the court.  They go too far, Judge.

THE COURT:  So you're fine until they make an opinion?

MR. GARRISON:  They -- they're rendering opinions that are for the court to render.  And so that -- that would be the -- that is a primary problem that we have with the proposed testimony.

A second problem, Your Honor, is that the opinions as to functionality and non-separability which they shouldn't offer in the first instance because these are matters within the province of the court.  It's not what I think, it's not what I think, it's what the court thinks that draw -- the court that draws that ultimate legal conclusion.

But, if you -- if you examine these reports, Judge, they don't talk about, even if they were allowed to render those legal conclusions and invade the province of the court, they don't talk about functionality of the fabric designs which are at issue in this case, they talk about functionality

of garment designs which are not at issue in this case.

And I would defer the court to Judge Donald's order in denying the defendant's motion to dismiss, and that was entered April 22, 2011.

THE COURT:  Uh-huh.

MR. GARRISON:  Footnote 5 on page 11, this came up in a different context, Star had been arguing that the designs should not be protected because they're not separately marketable.

THE COURT:  Right.

MR. GARRISON:  And by the way, those are two opinion's are rendered by one of the experts in this matter.

Well, Judge Donald said that's just not in this case.

THE COURT:  Right.

MR. GARRISON:  And if you read her footnote it's very clear, and she goes on to say, the court, referring to the *Galiano* court, which was considering casino uniforms and not fabric designs on casino uniforms, Judge Donald stated that the *Galiano* court recognized that fabric design is usually subject to copyright protection and articulated a likelihood of marketability test for

garment design only, covering the shape, style, cut and dimensions for converting fabric into a finished dress or other clothing garment.

We're not talking about that stuff. As Judge Donald goes on, as discussed above the instant case, *Galiano*, concerns fabric design which does not fall within the ambient of garment design.

**THE COURT:** In Judge Donald's order denying the motion to reconsider and denying the motion to clarify she addresses concerns that Star had about there being almost a law of the case effect, a preclusive effect --

**MR. GARRISON:** Uh-huh.

**THE COURT:** -- and -- and cites that very footnote, there was a concern about that that very footnote.

The court says that while the terms -- well, the court used the terms, finds and concludes in the order such terms are not meant to connote any determination of ultimate factual issues in this case and thus have no preclusive affect. And now a Rule 12(b)(6) motion does not preclude the defendant from defending against impeaching or otherwise contradicting the factual allegations of the plaintiff's complaint or otherwise producing any

evidence to support the defendant's position and will release the plaintiff of its burden to offer evidence.

THE COURT: So in effect she says, I said it for the purposes of 12(b)(6) but not for the purposes ultimately of the case.

MR. GARRISON: I agree with that, Your Honor. I think what she was saying is the issue is still open.

THE COURT: Okay.

MR. GARRISON: I mean, either party can -- can challenge or not the separability of the fabric designs from the uniforms.

My point is that that's for the court to draw the ultimate conclusion on whether the designs are separable or not.

We're not disputing that they have the opportunity to put before the court underlying facts from which the court could opine as to whether there is separability or not, but it's not for the expert to opine, that's the ultimate legal conclusion which are substantive law and I don't think it's contradicted, states that that's not for an expert -- that is not even permitted by the register of copyrights who tried to testify in the case about

issues of functionality or separability, I forget which, it's for the court to make that ultimate determination.

Now what kind of evidence -- what kind of evidence would be considered by the court in helping the court determine if the fabric designs are separable or not, that's another matter.

Your Honor, it would be like -- it would be like someone going out and hiring an expert to come in and say, well, in this personal injury suit, well, that defendant was negligent.

**THE COURT:** But isn't that -- let's go back to the medical malpractice example, isn't that what we have?

I mean, you have -- you have an expert that says I know the standard of care and the standard of care in this area is -- is X, Y and Z, Dr. Smith did not adhere to that standard based on my knowledge of the standard and my observation of the record, isn't that -- that --

**MR. GARRISON:** Your Honor, I -- I can't -- I can't speak to medical malpractice matters and whether that's apposite or not, but I -- I would say it this way, I'll challenge the defendant to come up with a case in which an expert was allowed to invade

the province of the court and for that expert to render that ultimate conclusion in a copyright matter.

**THE COURT:** In a copyright matter, all right.

**MR. GARRISON:** In a copyright matter.

**THE COURT:** Okay.

**MR. GARRISON:** And that's just -- it's just not -- it's just not right, I mean, it's for the court to determine.

And further, these opinions, legally deficient as they are, they go to the alleged functionality of the garments, they talk about how the garments were. They don't talk about the fabric designs on the garments, which is what this case is all about.

And that's the whole conceptual difficulty, and I appreciate that, and things have evolved over the last several years. In common parlance we would talk about uniform designs, when we would be talking about the two-dimensional fabric design, the look, if you will, on the front of the design. They don't talk about how that looked, that painting on the wall, that sketch, this thing started out as a sketch, it's separable from the

uniform.  Why?  Because it started out somewhere else as a sketch and it's now placed on the uniform.

And they talk about, the experts do, about the design covering up holes and seams and things like that, we're not trying to copyright the covering up of holes or seams.  We -- they are talking about the physical components -- they are talking about removing the physical components of the uniform basically saying, gee, I can remove that section of the physical item.

**THE COURT:**  And still have a uniform.

**MR. GARRISON:**  And still have a uniform.

But as Judge Donald also recognized, as far as copyrightability of the two-dimensional designs -- designs on clothing of concern, the works are eligible for protectability if plaintiff can show that there is physical -- physical separability or conceptual separability, either way.

**THE COURT:**  Let me ask you this, how does plaintiff propose to show that without expert testimony?

**MR. GARRISON:**  We're going to show the, as is done in the cases, Your Honor, we're going to -- we're going to bring in the designs that started out as sketches on paper.

We're going to show the designs as they appear on the uniforms that went out the door.

We're -- we're going -- the jury is going to eyeball it or the court is going to eyeball those things, it's just -- as Bob Dylan said, "You don't need a weatherman to know which way the wind blows," it just is.  And it's -- it's -- that part is not complicated.

**THE COURT:**  Okay.

**MR. GARRISON:**  But again, they're opining as to the functionality based upon being able to cut a hole in a uniform and pull it out and say, look, that design is functional because we just removed it from the uniform and there's a hole there.

No, they didn't -- they didn't remove the fabric design, they removed the part of the garment on which the design appears and which is conceptually separable from the uniform itself.

And they don't even talk about, they don't even opine on whether we have shown or can show conceptual separability, but that's a good thing.

**THE COURT:**  I was going to say --

**MR. GARRISON:**  They can't do that either, they can't do that either.

**THE COURT:**  You are not going to argue

with them about what they didn't show.

**MR. GARRISON:**  Again -- again it is -- but for us to prevail we can show either the designs are physically separable or conceptually separable.  And they don't even purport to challenge by their opinions whether or not the designs are conceptually separable.

And we intend to establish that with proof from which the court -- not Goldaper and Sarabia, I hope I didn't mangel their names, it's not for them to say, it's for the court to say actually hearing the part of the evidence.

And, you know, if the court looks at the opinions of the experts, one states -- Goldaper -- let's start with Sarabia, he, or she, I forget which, talks about the -- Sarabia renders three opinions, two relate to the alleged functionality of parts of the garments.

There's no reference to fabric designs appearing on the garments.

Sarabia says, the drawings of Varsity styles 74, 78 and 815, and the pictures of Varsity styles 299-A and 299-B -- these, Your Honor, were what -- these were the deposit copies --

**THE COURT:**  Right.

**MR. GARRISON:** -- sent to the copyright office, each of which is part of the copyright registration show clearly uniforms.

Do we need an expert for that, I mean, we will concede that, I mean, these things -- these fabric designs were on cheerleading uniforms, you got to show the copyright office what you've got.

And then states that -- then comments discusses functional parts of each garment, functional parts of each garment. Again invading the province of the court.

And if -- if the court looks at the opinions of the -- the other expert, their eight, and of those, four through eight talk again about the functionality of the uniforms or their physical components.

Again, this is irrelevant. It's just not in the case, it's the functionality of the fabric designs on the uniforms. Not whether a piece of the garment, that is part of the uniform, is functional.

And then the second and third opinions are that the uniform has no independent value and cannot be sold separately, that the -- that these components -- design components cannot be sold separately.

Judge Donald in her footnote ruled that that is not part of this case, that that is not the test.

**THE COURT:** Well, no, she didn't rule it as a matter of the case, remember she -- she didn't say that's -- that's so much the law of the case, it's for the purpose of 12(b)(6), that was the justification for allowing plaintiff's claim to go forward.

**MR. GARRISON:** Well, I don't quite see it that way, Your Honor. I think she is pointing to substantive law that -- I think she pointing to substantive law that --

**THE COURT:** But she specifically mentions that footnote that you're -- you're talking about and she says, while the court used the term finds and concludes, such terms are not meant to connote any determination of ultimate factual issues on the case, and thus have no preclusive effect.

And I look at it in the -- in the totality of the -- the sole question before the court at -- at 12(b)(6) stage is does the plaintiff have enough stated on the face of the complaint to go forward. And taking the plaintiff's factual allegations and the claim that the plaintiff makes, the plaintiff

has enough to go forward. But I don't --

MR. GARRISON: Your Honor, I think that -- excuse me.

THE COURT: -- but I don't think that she is saying as -- because -- because if that were the case, then she would not have then turned around and said in the October 31st order, that Star's challenge to separability was permitted to go forward.

MR. GARRISON: I don't -- I don't disagree with that, Your Honor, but I think the keywords you mentioned are factual considerations.

THE COURT: Right.

MR. GARRISON: When she -- she cited that case for the legal proposition that this is not an appropriate test. That doesn't involve a factual consideration, she said that you just don't go there, you just don't go there in these cases, it's just not something that figures into the calculus on this, that she was -- she was not factually determining anything, I think she was just citing case law that says, you know, if you are talking about -- if you are talking about fabric designs as a legal matter, we don't get to --

THE COURT: Likelihood of marketability --

33

**MR. GARRISON:**  Yes.

**THE COURT:**  -- but not that you don't get to --

**MR. GARRISON:**  The facts are still wide open.

**THE COURT:**  Yeah.

**MR. GARRISON:**  But whether the -- but whether this legal test is appropriate or not, she stated that it's not.  She is not concluding factually that something is independently marketable or not, she is just saying that you don't go there. That's the way I read it.

**THE COURT:**  Okay.

**MR. GARRISON:**  The -- I'm not going to beat a dead horse, Your Honor, but it's again the very important distinction, however fine it may appear to be, and the cases talk at length about this, the copyright instructions talk about this. If you look at the instructions to the copyright application, how to fill out this thing, fabric designs and two-dimensional designs are defined. And it's made very, very clear that what you are talking about is the look on the uniform, start out with the sketch if you will, put it on the uniform, that's what you register, you don't register the

uniform.

Does that mean they're separable?

It does to me, but I don't get to make that determination, the judge does, not this expert.

And further, these fabric designs that are registered, they appear on other garments. Right there it goes to show that you can separate it from the uniform and stick it on something else.

So the -- and just a couple of tidbits.

One of the experts obliquely talks about there being a history in the industry of companies trying to wrongfully register designs and then beat the people over the head with it. I don't know if that's an oblique way of trying to say that Varsity committed fraud on the copyright office, but that's certainly not admissible that any -- that some companies do these things. And further whether Varsity committed fraud on the copyright office or not is certainly a legal conclusion and not for this expert -- opinion for this expert to render.

And also one of the justifications for using the expert reports mentioned by Star Athletica in its reply brief in opposition was that the experts weren't being offered just to talk about what I've been discussing but also to show that

there had been no copying. I can't find that in those reports, and so I would be interested in where those sections are.

Unless there's some questions, Judge, I guess I've said my peace.

THE COURT: All right, I thank you, sir.

MR. GARRISON: Thank you.

THE COURT: All right. And who will speak for Star.

MR. CROSBY: I will, Your Honor, Steve Crosby.

THE COURT: Yes, sir.

MR. CROSBY: Your Honor, to address Mr. Trammell's comment that he can't find these in the report.

THE COURT: Mr. Garrison.

MR. CROSBY: Oh, that's Mr. Garrison, I'm sorry.

THE COURT: He's taller than Mr. Trammell.

MR. CROSBY: Yes.

I think that the -- the expert reports go to the facts underlying functionality and the facts underlying separability without addressing the affecting functionality or adversely affecting the useful article itself.

And so that goes to the issue of whether or not these things are even protectable or not and whether or not you need to consider them in terms of substantial similarities because if they are not protectable they drop out of the equation.

Your Honor, we have prepared a document here to -- to show Star's position on garment designs versus fabric designs, we would like to give to the court and opposing counsel.

**THE COURT:**  Okay.

(Document passed to counsel and the court.)

**THE COURT:**  Thank you.

**MR. CROSBY:**  It's our understanding then that rather than being fabric designs reproduced and/or applied to the surface of the parties' uniforms or the plaintiff's uniforms in this case, that, in fact, the products are and the designs depicted in their copyright sketches are of garment designs.  Garment designs of solid color, panels of clothing, cut and formed into, you can see there in the left column of the document that I just provided to the court, a back panel, two shoulder inserts, an upper torso panel around the shoulder, and a lower torso panel for the front panels of the -- of the

uniform, and braiding, braiding that is used to cover and protect and reinforce the hems and seams of the uniforms once they're sewen together.

How they are sewen together is shown in the right-hand column.

In detail number one, you can see basically how the seams are formed between these different panels of solid color clothing.  You can see there is no fabric design on these panels whatsoever, they are just straight dyed goods that are received and manufactured by the manufacturers.

Under detail two you can see the structure that is not a structure disclosed to the copyright office through their sketches and through their photographs of finished items that shows how, at least for the designs, the five designs at issue, these garments are pieced together.  You can see seams and you can see hems and seam allowances, the distance between the stitching of the adjacent various colored panels of clothing.

And these are turned to the outside.  And it's Star's understanding they are turned to the outside to achieve a smooth finish on the inside.

**THE COURT:**  Well, Mr. Crosby, I mean, just interrupt you just really quickly.

I don't know that Mr. Garrison's argument, and let me make it real clear, I, you know, there's -- there's no way in the course of a discovery dispute that I'm going to make any ruling that is going to tip one way or the other on this issue of fabric design versus garment design.  That is truly something that is not left to me.

And so while I understand and I appreciate the -- the exemplar here, I think the questions that -- that Mr. -- Mr. Garrett had were -- Mr. Garrison, excuse me, had were number one, did the expert opinions go a step too far in the context of -- of copyright.

It's -- it's -- it's my belief so far that, and I'm -- I'm happy to allow Star to take up his challenge to find a -- a copyright case where an expert has been allowed to opine as to the ultimate question of functionality and separability.

And so, I think -- I think that's -- that's the heart of the motion, you know, whether or not, you know, these elements are separable and whether they are artistic elements in and of themselves or are they merely functional elements is -- that's -- that's -- that's a trial question.

But the question of whether or not what

these experts are saying goes a step too far.  And I think -- I think that's -- that's -- that's one questions that's being raised here.

And the second question is, and I -- I think you might have gone some to this question of -- of what they're talking about, but -- but I think that the -- ultimately, as I've read their opinions, I think that's probably the question that's -- that's the one that's still on the table --

**MR. CROSBY:**  Okay.

**THE COURT:**  -- is -- is are they allowed to go there.

**MR. CROSBY:**  Well, I certainly think they are.  And I know that the --

**THE COURT:**  What case is that you've got?

**MR. CROSBY:**  -- the case *Kohus v. Mariol* case, 328 F.3d 848, which is cited in our opposition --

**THE COURT:**  Okay.

**MR. CROSBY:**  -- position, goes exactly there, and, in fact, it said in cases like this one that involve the functional object rather than a creative work, and that's where the parties are differing here, and that's why my demonstrative was

produced.

THE COURT:  Okay.

MR. CROSBY:  It's says that it is necessary to eliminate those elements that are dictated by efficiency.

And in that case, the *Kohus* case, the court held that expert testimony will likely be required to establish what elements, if any, are necessary to the function of any latch design for the upper arm of a collapsible playyard.

Now certainly functionality is not a legal issue and not an ultimate legal issue.  Whether or not something is functional or not is an issue of fact.

In separability you breakdown the -- the products at issue and look at the constituent design elements and determine one by one whether or not these elements are functional or not.  If they do, they drop out of the equation for protectability.

Now opining whether or not a particular element is -- is separable or not is also going to an underlying fact, not the legal conclusion that the overall design is not protectable or not copyrightable, but that the element itself is not separability, say, without adversely affecting, at

least to some extent, the useful article overall.

Now going to the -- to the plaintiff's designs at issue and these sketches or these photographs of finished garments versus actual garments themselves, I have a question that I want to ask here, but it is a question that I have, but how do they put this sketch artwork on to a uniform when what we actually see is just a garment construction of the thing depicted, the thing sketched out.

And I think that these experts, looking at the constituent design elements of what they are and -- and opining about their functionality, the facts underlying separability issue and the fact that they're not -- the removable of them, at least to some extent, adversely affects the functionality of the overall garment is certainly relevant to the court's determination of separability, whether it be physical or conceptual separability.

And I believe that's what the *Kohus* and *Mariol* case was about and how -- how the Sixth Circuit came out on that.

THE COURT: Okay.

MR. CROSBY: I think that you have already covered that the issue on separability that Judge

42

Donald in her order regarding the motion for clarification had already ruled that this is a decision to be made at a later date.

And then I think that's it.

Any other issues that --

**THE COURT:**  I don't -- no, I don't think I have -- I don't think I have, that -- that's the primary, for me that was the primary issue that was raised.

**MR. CROSBY:**  Right.

**THE COURT:**  With regard to the extension of time, I think it's reasonable that Varsity have an extension of time, I mean, they have to know what they're rebutting, and it's impossible to -- I think it's impossible to -- to disclose experts unless you know what experts you are rebutting.

I think Star objected, talk to me more about why -- why you object to giving them sometime after the court has ruled on this motion?

**MR. CROSBY:**  Certainly.

In giving that discovery is still ongoing in this case, we would also like to reserve the right to supplement our responses.

Mr. Baldridge has indicated that he will be searching for and producing documents that we

would want our experts to look at, especially quality assurance and construction manuals on these things to supplement their reports.

**THE COURT:** Do you all have a trial date?

What is your trial date that you have set in this?

**MR. CROSBY:** We do not.

**THE COURT:** Of course, you have been reassigned to Judge Cleland.

**MR. CROSBY:** And, Your Honor, this may be the appropriate time to revisit whether or not an extension of the discovery --

**THE COURT:** Schedule.

**MR. CROSBY:** -- schedule would be appropriate in that we do have a new judge, the parties are working together to produce the documents.

**THE COURT:** I think probably the best thing that you all could do on that is to workup a joint motion, and to the extent that -- that -- that you've got some agreement about where you want to go as far as a revised schedule. I can't take it up on my own initiative.

**MR. CROSBY:** Certainly.

**THE COURT:** But certainly if you all want

to file a motion, either joint --

Mr. Garrison.

MR. GARRISON:  Well, I can just go ahead and state that we are just we are unalterably opposed to a do-over of their expert reports and the extension of the discovery period.

THE COURT:  Well, now you all were asking for an extension of time to -- I guess that is how we got started talking about this is that you all had the motion for extension of time to disclose your rebuttal expert based on the motion to exclude theirs.

MR. GARRISON:  We did, Your Honor.  And any discovery that might be pertinent to that, we can understand that, but it's just a wholesale relaunching of discovery itself, we would just be opposed to that.

MR. CROSBY:  I don't think that is what we were talking about.

We jointly moved for a four month extension, Judge Anderson had given us two months, but we were certainly -- I think we -- the parties could use those additional two months.  And I don't think that we should be precluded from the additional fact discovery that -- that would go

45

along with the experts discovery.

THE COURT:  Well, move -- move for what you can agree on jointly and then separately move for what you can't agree on.

All right.  Then what we will do is, I don't want to rule from the bench on this one.  I will enter an order, it won't -- it shouldn't take terribly long.

And what I will do is, Varsity requested 30 days after the -- is that correct?

Did Varsity request 30 days after the ruling on the -- with regard to whether or not the experts were going to be excluded.

MR. BALDRIDGE:  Your Honor, I just might ask this.

It seems as though we zoned in on the quick issue that the court is going to determine. We would be pleased to, you know, submit any supplemental authority on this discrete issue if the court thinks it would be beneficial.  In fact, we would request to be able to do that.  And we can go within five days.

THE COURT:  Can you both do it in five days?

I mean, cause --

MR. CROSBY: I think that we have depositions coming up next week.

MR. BALDRIDGE: We're going to be busy.

We can do it in ten days.

THE COURT: Any supplemental briefing due within ten days of today.

And then we'll give 30 days -- well, depending on how the ruling goes, I mean, if it -- well, I'll -- I'll -- I'll tell you something on that one, suffice to say that there will be some extension. I don't know if it will be 30 days or not, but it will be something depending on how it goes. Okay.

Anything else from the parties?

Oh, now you all have got -- we've still got like more motions out there, so we might want to talk about what we want to do with those.

We've got 114 and 121.

114 is the motion to compel from the defendants -- is that the one --

MR. BALDRIDGE: I think I addressed those.

THE COURT: That was 110.

MR. BALDRIDGE: I think it was refiled, Your Honor, after you already gave them leave to --

THE COURT: All right. So -- so when you

47

do your proposed, let me know that it is 110 and 114.

All right. And then we have got 121 which is the motion to quash some subpoenas.

Of course, that was filed on the 19th. On non-dispositive motion you've got 14 days to reply which would have been the 23rd, haven't gotten a response, normally that would be grounds for me to grant.

Did you all have anything you wanted to say on the motion to quash?

**MR. RAFFERTY:** The problem is, Your Honor, that I don't believe their supporting memorandum has been filed because it was an unopposed motion, I think, if I'm not mistaken.

Am I right about that?

**MR. BALDRIDGE:** No --

**THE COURT:** 121?

**MR. BALDRIDGE:** -- this was just a -- just a motion that didn't exceed the -- it was just filed -- it was just a normal filed motion.

**MR. RAFFERTY:** Okay. Well, I don't know which number we're talking about.

**MR. BALDRIDGE:** Are we talking about the motion to quash, Your Honor?

**THE COURT:** The motion to quash subpoenas issued to non-parties Broadway Cheerleading, C. J. Industries and Kimbro Manufacturing or in the alternative for protective order submitted by Varsity Brands, the attachment were, number one memorandum in support, two Exhibit 1, three Exhibit 2, four Exhibit 3, five Exhibit 4, filed on 3-19.

**MR. BALDRIDGE:** I believe that those subpoenas have expired, and C. J. Industries without being served, so we're serving a new subpoena for that one. And we haven't had response yet from Broadway on that, but -- Your Honor, there's a third party, another party, there's three.

**THE COURT:** Broadway, C. J. and Kimbro.

**MR. BALDRIDGE:** Yeah, and I don't think Mr. Crosby said anything that they received anything from Kimbro Manufacturing.

And the reason this is important, Your Honor, is because some of these suppliers, specifically C. J. Industries, and Kimbro are former suppliers to Varsity, they have Varsity's confidential information, the reason we -- we tried to work it out to not have to file a motion to compel or, sorry, a motion to quash --

**THE COURT:** To quash.

**MR. BALDRIDGE:** -- because we don't want Varsity's confidential, you know, trade secrets basically on how some of these garments are, you know, constructed turned over to Star Athletica without some protection --

**THE COURT:** Protective order, will a protective order, is that sufficient?

**MR. BALDRIDGE:** We asked for the opportunity to -- to get the materials once they have them before they turn them over to their client so we can appropriately designate something.

If Kimbro didn't, for example, say it's highly confidential attorney's eyes only, we just wanted the opportunity to look at it first before they turn it over to Star Athletica to make sure our proprietary information isn't just handed over to a competitor such as Star Athletica.

**THE COURT:** Because there is a possibility of working this out, can you all review document entry 121 and get with Mr. Baldridge and either agree on a protective order, scheme, or something in the next five days.

**MR. CROSBY:** I think we can do that, Your Honor, certainly.

50

**THE COURT:** Okay. All right. So --

**MR. BALDRIDGE:** I think there is a protective order in place.

**THE COURT:** There is a general protective order, but I think what he is saying is with regard to the information received from the third parties they want some kind of protection.

It sounds like it's more than just what is in the protective order that generally covers the material that is being exchanged by the parties.

**MR. CROSBY:** I don't think that --

**MR. BALDRIDGE:** I think the current protective order could govern this.

The concern from Varsity is that this third party may not mark a document as confidential and turns it over Star Athletica's counsel and then they say you, aha, this document is not confidential, let me turn it over to Star Athletica. And that's our concern, he we want an opportunity to --

**THE COURT:** To mark it.

**MR. BALDRIDGE:** -- to properly designate it under the existing current protective order.

**MR. CROSBY:** Your Honor, I think we would like to take a look at those documents.

THE COURT:  Okay.

MR. BALDRIDGE:  We're not objecting to them looking at it, Your Honor, before it goes to any competitor, such as Star Athletica, we want an opportunity to protect our information.

THE COURT:  Yeah.

All right.  You got five days to respond or else I'm going to grant it and grant whatever they are asking for outright.

MR. CROSBY:  Certainly.

THE COURT:  Okay.

MR. BALDRIDGE:  Thank you, Your Honor.

THE COURT:  And either the response is going to be a response in opposition or it's going to be something from the parties saying here's what we have worked out.

MR. CROSBY:  We have agreed to let them review the documents before they produced to Star.

THE COURT:  Yeah, let me know something.

MR. CROSBY:  Certainly.

THE COURT:  Okay.

MR. CROSBY:  Yes.

THE COURT:  All right.  And then that will cover all pending motions so far.

MR. BALDRIDGE:  And, Your Honor --

52

THE COURT:  Yes, sir.

MR. BALDRIDGE:  -- if I can just imposer one -- one last thing and the court.

THE COURT:  That's between you and Mr. Garrison because he is like, you know, he's got some place to be.

MR. BALDRIDGE:  Your Honor, if -- if they do receive any of these documents, if they trickle in, you know, certainly pending the court's ruling on our motion to quash, we would hope that they wouldn't turn the documents over to Star Athletica.

MR. CROSBY:  I think I can agree with that.

THE COURT:  Sequester them until we can get something resolved.

Okay, all right.

MR. BALDRIDGE:  Thank you, Your Honor.

THE COURT:  Anything else, gentlemen?

Always a pleasure.

MR. RAFFERTY:  Thank you.

MR. BALDRIDGE:  Thank you, Judge.

(Adjournment.)

53

**C E R T I F I C A T E**

I, Lynn Dudley, do hereby certify that the foregoing 53 pages are, to the best of my knowledge, skill and ability, a true and accurate transcript from the FTR disk of the motion hearing on March 18, 2014, in the matter of:

VARSITY BRANDS, INC., ET AL.

vs.

STAR ATHLETICA, LLC

Dated this 18th day of March 2014.

```
                              _____
                              Lynn Dudley
                              Transcriber
```